## Robert Treat *versus* James N. Cooper.

A note for value received and for a sum certain, payable to a person named or to his order at a fixed time and place, is a negotiable note, although the words, " the contents of this note to be appropriated to the payment of R. M. N. S. (a third person,) mortgage to the payee," were written upon the back thereof; and an action may be maintained thereon in the name of an indorsee.

Assumpsit by the plaintiff as indorsee against the defendant as maker of two promissory notes, each dated June 15, 1833, payable in two years, the one to William Emerson, or order, and by him indorsed, and the other to W. & J. Coburn, or order, and by them indorsed, and both were also indorsed by W. T. & H. Pierce & Co. On the back of the first were written, but not signed by any one, these words, " The contents of this note to be appropriated to the payment of R. M. N. Smyth's mortgage to Wm. Emerson." And on the other were written these words, " The contents of this note are to

be appropriated to the payment of R. M. N. Smyth's mortgage to W. & J. Coburn."

When the cause came on for trial, the plaintiff read the notes, and offered to prove, that R. M. N. Smyth purchased of the payees of the notes a parcel of land, in payment for which he gave notes secured by mortgages of the same land ; that afterwards Smyth sold the same land to the defendant and A. Cooper, who were then partners, and took the notes in suit and others in payment therefor ; that afterwards, and before the notes described in the mortgages became due, Smyth paid those notes and took them up, and the mortgages were both discharged ; that thereupon he had the notes indorsed to W. T. & H. Pierce & Co. by whom they were indorsed to the plaintiff for a valuable consideration ; and that the defendant was notified, that the mortgages were discharged before this suit was brought. In this stage of the proceedings the parties agreed that a nonsuit should be entered, subject to the opinion of the Court. If the Court should be of opinion, that the action in this form can be sustained, the case was to stand for trial ; and if not, the nonsuit was to stand.

*W. Kelley,* for the plaintiff, insisted that as these notes were made payable to order, in money, at all events, for a definite amount, and at a certain time, they were negotiable, and the suit might be maintained by the indorsee in his own name. The indorsee might be compelled to appropriate the proceeds of the notes to the payment of the mortgages, if the payees could be. They stand alike in that respect. The memorandum however was no part of the note, and could not alter its terms or effect. Bay. on Bills, (Ph. & S. Ed.) 14, 34, 106, and cases cited, and notes.

*W. G. Crosby,* for the defendant, contended that the words written upon the backs of the notes were to be considered parts of them. This is the natural presumption, and such are the decisions. *Jones* v. *Fales,* 4 Mass. R. 245 ; *Makepeace* v. *Harvard College,* 10 Pick. 303. It is then payable for a particular purpose, and restricted to that alone. Merely putting in the words or order, does not make a note negotiable, if

from any cause it does not come within the spirit of the defi-
nitions of a negotiable note. If the payees could transfer the
note, the object of it would be entirely defeated. The very
nature of a negotiable paper is, that the entire and absolute
right to the sum mentioned therein should be transferred by
the indorsement. If it was not negotiable when made, no
after transactions could make it so. *Hayward* v. *Perrin*, 10
Pick. 228.

The opinion of the Court was drawn up by

WHITMAN C. J. — The question submitted is, were the
notes declared on negotiable? and this depends upon the effect
of a writing indorsed on each of them. The writing on one
is, " the contents of this note are to be appropriated to the
payment of R. M. N. Smyth's mortgage to William & Jere-
miah Coburn;" they being the original promisees in that note;
on the other, it is in the same form, but to a different payee,
and to the holder of a different mortgage from said Smyth.
The notes, upon their face, purport to be for the payment of
money absolutely, in one and two years from their dates, with
interest annually; and the promise in each is to the payee, or
to the order of each respectively.

Upon what principle can the writings on the back of each
of the notes be considered as in restraint of their negotiability?
Can they be considered as making the notes conditional? Or
did they amount to nothing more than a designation of what
was to be done with the money, when received by the payees?
If the notes were not intended to be paid absolutely, but only
in case of their being needed to discharge the mortgages,
would they not have been so expressed, and with a proviso to
that effect? and not have been left to an inference, to say the
least of it, very obscurely and inartificially indicated, if indi-
cated at all? If the mortgages were otherwise discharged as
the case shows they were, is it reasonable that the agreement
between the parties should be understood to be, that the notes
were not to be paid? Neither in the statement of the case,
nor in the arguments of counsel, is it intimated, that it was

ever understood, that the notes were not intended to be absolutely payable to the promisees; and, from the face of the notes themselves, we think it must be believed the parties understood it to be their agreement, that they should be so. If it were not so intended, why were the words, " or order," inserted, as is usual in notes intended to be absolutely payable and negotiable? and would those words have been inserted if it had been otherwise designed and intended?

The object of the parties was, manifestly, that the money, when received for the notes, should go in discharge of the mortgages, if then uncancelled; and in that event to be a discharge thereof *pro tanto*. And, in such case, the agreement by the payees, by accepting the notes with the memorandums on them, would have secured the giving of credit accordingly.

But, in the forms in which these appear, we cannot hesitate to come to the conclusion, that it must have been intended, that the payees should have a right to avail themselves of the money promised, from the promisors, *if they should* have occasion therefor, indirectly through indorsees. It could make no difference to the payers whether it was so received or not. The destination and object of the payment would be the same in either case; and equally well adapted to answer the purpose of the payers. We cannot, therefore, come to any other result, than that the negotiability of the notes was not affected, or intended to be affected by the writings on the back of them. And the action must, according to the agreement of the parties, stand for trial upon other grounds of defence, if any there be.