## JUDY v. WARNE.

### [No. 7,784. Filed June 27, 1913.]

1. BILLS AND NOTES.—*Negotiability.*—*Effect of Words Indicating Mortgage Security.*—A note, payable to the order of a named person at a bank in this State, is upon its face negotiable paper governed by the law merchant, and the fact that the words "secured by mortgage" appear thereon will not of itself defeat its negotiability as commercial paper. p. 87.

2. BILLS AND NOTES.—*Collateral Agreements.*—The rule that contemporaneous agreements pertaining to the same subject-matter are to be construed together does not import into a promissory note all the collateral agreements that may be contained in a mortgage given to secure such note. p. 88.

3. BILLS AND NOTES.—*Rights of Purchaser.*—*Purchaser with Notice.*—*Bona Fide Purchaser.*—Where the purchaser of a note at the time knew, or should have known, of some equity or defense of the maker of the note, he will be held to have taken the same subject to any defense the maker may have; but if he is an innocent purchaser without notice of any existing equities he will be protected against their enforcement. p. 88.

4. BILLS AND NOTES.—*Duty of Purchaser.*—*Diligence.*—One dealing in commercial paper, offered for sale under circumstances that are calculated to excite the suspicion of a reasonably cautious person, is expected to use reasonable diligence. p. 89.

5. BILLS AND NOTES.—*Bona Fide Purchaser.*—*Notice.*—Where a purchaser of land, by stipulation in the deed, assumed the payment of a mortgage thereon, and then procured from the mort-

gagee an assignment of the note to him without recourse, and thereafter before maturity of the note transferred the land and note to plaintiff in payment for other land, the plaintiff was not chargeable with notice that the note had been paid, even though the note on its face showed that it was secured by mortgage and had been transferred without recourse, since a *bona fide* purchaser takes a negotiable instrument free from equities not disclosed on its face and unaffected by the contents of public records not referred to in the instrument itself. p. 89.

6. VENDOR AND PURCHASER.—*Bona Fide Purchaser.*—*Records.*—*Notice.*—*Defenses to Notes.*—A purchaser of land cannot be charged with constructive knowledge of the contents of his instruments of title, except so far as they may bear upon his title to such real estate, and hence the purchaser of a negotiable note before maturity, is not to be charged with knowledge of secret equities or defenses thereto that might have been disclosed by the examination of his instruments of title. p. 90.

7. BILLS AND NOTES.—*Estoppel.*—*Bona Fide Purchasers.*—*Defenses.* —*Reissuance After Payment Before Maturity.*—Where a purchaser of land by stipulation in the deed assumed the payment of a mortgage thereon, then procured from the mortgagee an assignment of the note to him without recourse, and thereafter before maturity of the note transferred the land and note to plaintiff for other land, the payment of the note by such purchaser, while it would be treated as a payment as between him and the maker, did not operate as a discharge that would preclude plaintiff from enforcing a payment by the maker, since the maker must suffer the consequences of his act in putting the note in issue and thereafter requiring the purchaser of his land to assume its payment, thus in effect making such purchaser his agent and enabling the latter to procure the note and before maturity pass it on to an innocent purchaser for value. p. 90.

From Tipton Circuit Court; *Leroy B. Nash,* Judge.

Action by John F. Judy against Charles H. Warne. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Stansbury & Billings,* for appellant.
*Gifford & Gifford* and *Every A. Mock,* for appellee.

HOTTEL, P. J.—Appellant brought this action to recover on a promissory note executed by appellee. The pleadings tendering the issues passed upon by the court were appellant's complaint and appellee's special answer thereto and appellee's cross-complaint and appellant's special answer

thereto. A demurrer filed by appellant to appellee's answer to said complaint was overruled, and a demurrer by appellee to appellant's answer to the cross-complaint was sustained, to each of which rulings the appellant excepted and refused to plead further. Judgment was then rendered against appellant on his complaint and for appellee on his cross-complaint. The respective rulings on the demurrers to each of said answers are each assigned as error and relied on by appellant for a reversal of the case.

The complaint is in a single paragraph and avers in substance, that appellee on June 11, 1907, by his promissory note, a copy of which is filed with and made part of the complaint, promised to pay one Morrow the sum of $850 one year after date, negotiable and payable at Farmers State Bank of Bunker Hill, Indiana, with six per cent interest from date, payable semiannually in advance and eight per cent after maturity. Other averments of the complaint show the several transactions of endorsement through which the note was finally transferred to appellant as owner, and also that the maker of the note executed a mortgage on certain real estate to secure the same, all of which averments are set out more in detail in said answers. These answers are so nearly identical in their averment of the facts relied on as a defense to the complaint and cross-complaint respectively, that we will set out only the averments of appellee's answer to the complaint, and then indicate wherein the averments of appellant's answer to the cross-complaint are different.

The averments of the answer to the complaint are, in substance, as follows: On June 11, 1907, appellee was the owner of a certain lot in the town of Oxford in Benton County, Indiana, particularly described in the answer and on that day he executed the note sued on and described in the complaint and also executed, at the same time, a mortgage on said part of said lot, to secure the payment of said note and delivered both the note and mortgage to the payee, Warren Morrow, who duly recorded the mortgage in the

mortgage records of said county on June 19, 1907.   On October 14, 1907, the appellee sold and conveyed by deed said part of said lot to one John C. Fullenweider and in said deed was set forth the following condition to wit:  ''Subject to a mortgage in the sum of $850.00, payable to Warren Morrow of Miami County, Indiana,  *  *  *  all of which the said John C. Fullenweider assumes and agrees to pay.'' The deed from appellee to Fullenweider was, within 45 days after its execution duly recorded in the deed records of Benton County.   On October 14, 1907, Morrow delivered said note to Fullenweider with the following words and figures endorsed thereon.   ''October 14, 1907, I hereby assign without recourse this note herewith to John C. Fullenweider. Warren Morrow.''   On November 19, 1907, Fullenweider obtained from the appellant 280 acres of land situated in Washington County, Indiana, and, as a part of the consideration therefor, transferred to appellant said part of said town lot in the town of Oxford, above mentioned and said note, and delivered up to appellant the possession of said part of said lot and said note and endorsed the said note on the back thereof with the following words and figures: ''Nov. 19, 1907, for value received I hereby assign the within note to John F. Judy, or order.   John C. Fullenweider.'' At the time appellant received said note as aforesaid, he gave to Fullenweider full and valuable consideration therefor to wit:  $900 in lands in Washington County, without any knowledge of the condition and agreement in said deed from Morrow to Fullenweider whereby Fullenweider assumed and agreed to pay said note and did not have such knowledge until several months after receiving said note, nor did he have any knowledge or information of any defense the appellee had or claimed to said note or any part thereof until long after he had received such note, except such notice as he had by reason of the stipulation in the deed from the appellee to Fullenweider, and of which he may have been and was bound to know.   The note sued upon

is of the tenor following: (Here follows the copy of the note). Appellant knew that said note so purchased was secured by mortgage and that by the terms of the deed of appellee to Fullenweider he knew that Fullenweider agreed to pay the note; that said note was procured by said Fullenweider from said Morrow, and that the debt evidenced thereby was thereby paid, and that appellant having received as part consideration of the Washington County real estate, the real estate secured by said mortgage, he knew of the stipulation contained in said deed. Wherefore appellee says that the note when it came into the hands of Fullenweider was paid and the debt discharged, and that the appellant knew and was bound to know of such fact, and therefore ought not to recover herein, and appellee asks judgment for costs.

The averments of the answer to the cross-complaint are almost identical with these averments both in form and substance except on the subject of appellant's knowledge of any defense of appellee to the note in suit when he purchased the same. Upon this subject the answer to the cross-complaint alleges: "That at the time said Judy received said note as aforesaid he had no knowledge of the condition and agreement in said deed from said Warne to said Fullenweider, whereby said Fullenweider assumed and agreed to pay said note, nor did he have any such knowledge or information concerning any agreement on the part of said Fullenweider to pay said note or in any manner to become liable for its payment, nor did he, said Judy, at any time have any knowledge or information of any defense said Warne had or claimed to said note or any part thereof until long after he received the same as aforesaid." So that the difference between the two answers seems to be in the conclusions of the respective pleaders as to the effect of the specific facts pleaded upon the subject of appellant's knowledge of any secret equity or defense of appellee to the note

in suit when appelant purchased the same, rather than in the facts upon which such conclusions are based.

Appellee's cross-complaint to which appellant's said answer was directed contains averments substantially the same as those in said answers with reference to the execution of the note and the mortgage and the sale of the real estate by appellee to Fullenweider, and the condition contained in the deed conveying such real estate, and also avers that on October 14, 1907, said Morrow turned over to said Fullenweider the said note described which he, Fullenweider, had agreed to pay and which he did in fact pay, that said note has been fully paid and satisfied; that the appellant is claiming to be the owner of the note by virtue of the purchase of the same for value and has possession of the same without right; that he is not the owner nor is he entitled to the possession thereof. Appellee asked that the note be declared paid and that he have possession thereof.

The averments common to each of said answers show that appellant "gave full and valuable consideration" for the note in suit without any actual "knowledge of the condition and agreement in said deed from said Warren to said Fullenweider whereby the latter assumed and agreed to pay such note" and "without any actual knowledge or information of any defense the appellee had or claimed to have to said note or any part thereof;" the theory of appellee's answer being, as indicated by its additional averments, that the facts pleaded, charged appellant with actual knowledge that the note was secured by mortgage, and that by reason of the provision of the deed of appellee to Fullenweider, appellant was charged with constructive knowledge that Fullenweider had assumed and agreed to pay the note.

The note is payable to the order of Warren Morrow at a bank in this State and hence upon its face is negotiable paper governed by the law merchant unless the words "secured by mortgage" above indicated as ap-

pearing at the close thereof, have the effect of destroy-
2.  ing its negotiable character as such paper.  As a gen-
eral rule agreements, contemporaneously executed,
and pertaining to the same subject-matter, are to be con-
strued together, but we think the courts generally have re-
fused to hold that this rule imports into a promissory note
all the collateral agreements that may be contained in the ac-
companying mortgage given to secure such note.  *Thorpe* v.
*Mindeman* (1904), 123 Wis. 149, 101 N. W. 417, 107 Am.
St. 1003, 68 L. R. A. 146, 148, 149 and authorities there cited.
However, we do not regard this rule as being important or
controlling in this case, as there is nothing indicated by the
averments of the pleading in question that there were any
stipulations or conditions in the mortgage, inconsistent with
or repugnant to the terms of the note, and the fact that the
note contained the words above indicated as appearing at
its close, will not of themselves defeat its negotiability as
commercial paper.  *Kelley* v. *Whitney* (1878), 45 Wis. 110,
30 Am. Rep. 697; *Thorpe* v. *Mindeman, supra; Chicago R.
Equipment Co.* v. *Merchants Nat. Bank* (1889), 136 U. S.
268, 34 L. Ed. 349, 10 Sup. Ct. 999; *Wilson* v. *Campbell*
(1896), 110 Mich. 580, 35 L. R. A. 544; 68 N. W. 278; *In-
diana, etc., R. Co.* v. *Sprague* (1880), 103 U. S. 756, 26 L.
Ed. 554; *Cisne* v. *Chidester* (1877), 85 Ill. 523; *Capron* v.
*Capron* (1872), 44 Vt. 410; *Craft* v. *Bunster* (1859), 9 Wis.
457.

The important and controlling question in this case, as
we view it, is:  Do the facts and circumstances disclosed
by the averments in these respective answers show
3.  that the appellant is a *bona fide* holder of the note in
suit with no notice of any existing equities at the time
of its purchase?  If so, it will be the duty of the court, un-
der all the decided cases, to guard strictly the rights of such
innocent purchaser and protect him against the enforce-
ment of such secret equities.  On the other hand, if the facts
pleaded are sufficient to show that the appellant knew or

should have known of *some* equity or defense of the maker of the note, he will take the same subject to *any* defense that such maker may have against such note. *Hankey* v. *Downey* (1891), 3 Ind. App. 325, 331, 29 N. E. 606; 1 Daniel, Negotiable Inst. §799; Tiedeman, Com. Paper §300.

4. "Persons dealing in commercial paper are expected to use reasonable diligence where such paper is offered for sale, under circumstances that are calculated to excite the suspicion of a reasonable cautious person." *Citizens Bank* v. *Leonhart* (1890), 126 Ind. 206, 210, 25 N. E. 1099. See, also, *Hankey* v. *Downey, supra.*

5. "The law is well settled that a man is regarded as notified of whatever appears in the instruments which constitute his chain of title, and whatever is sufficient to put him on inquiry is sufficient to charge him with whatever an ordinarily diligent search would have disclosed." *Mettart* v. *Allen* (1894), 139 Ind. 644, 650, 39 N. E. 239; See, also, Martindale, Conveyancing §§74, 277. It is very earnestly contended by appellee that, under the rule last announced, appellant at the time he traded for the note was necessarily charged with the knowledge that the note he was trading for was secured by a mortgage on the real estate which he was getting in the same transaction, and that the man with whom he was trading for both the note and real estate had, in fact, purchased the real estate of the payee of the note, and, in such purchase, and in the deed for such real estate, had assumed and agreed to pay the note. There is strong reason, apparently, for appellee's contention, and we were first inclined to his view of this question, as evidenced by the former opinion herein, but upon reflection and after a more thorough and careful investigation of the authorities applicable to the question involved, we are persuaded that our former conclusion is not supported by the decided cases. In order that commercial paper may serve the beneficial purposes which it is intended to serve in the every day business transactions of the public, the courts have very

properly protected it in the hands of innocent purchasers against any secret equities or "luggage" which, when a "courier," its face did not disclose. The general rule seems to be that the holder of such a note "takes it unaffected by the contents of public records not referred to in the instrument itself." 4 Am. and Eng. Ency. Law (2d ed.) 307; *Winston* v. *Westfeldt* (1853), 22 Ala. 760, 58 Am. Dec. 278, 280; and cases there cited; *Minnell & Co.* v. *Reed* (1855), 26 Ala. 730. In the case of *Kelley* v. *Whitney, supra,* the court in speaking of the effect of the words "secured by real estate mortgage" on the face of a note said: "They were neither sufficient to inform third parties of the contents or terms of the mortgage, *nor to put them upon inquiry."* See, also, *Thorpe* v. *Mindeman, supra; Howry* v. *Eppinger* (1876), 34 Mich. 29. It has also been held in other jurisdictions that an indorsement of a note without recourse in and of itself is not sufficient to charge the assignee with notice of any defense to the note or to put him on inquiry with reference thereto. *Kelley* v. *Whitney, supra.* Bigelow, Bills and Notes 443 and cases there cited; *Stephenson* v. *O'Neal* (1874), 71 Ill. 314; 8 Words and Phrases 7510 and cases cited. These authorities force the conclusion that

6. appellant should not be charged with constructive knowledge of the contents of his instruments of title except in so far as they may have effect on his title to such real estate, and render it subject to any mortgage thereon, and such question is not presented by the answer, and hence need not be decided. The contents of his instruments of title did not charge appellant with knowledge of any secret equity or defense to the note, and this is the theory upon which the answer proceeds.

In answer to appellee's contention that the note had in fact been paid by Fullenweider when he traded and assigned

7. it to appellant, it may be said that, as between appellee and Fullenweider, such note would be treated as paid; but when paid by Fullenweider the note was

not due and he again put it in circulation and when, under such circumstances, it reached the hands of an innocent purchaser for value, it could be again collected by such purchaser from the original maker. As applicable to this phase of the case it was said in the case of *Haug* v. *Riley* (1897), 101 Ga. 372, 386, 29 S. E. 44, 40 L. R. A. 244, 249: " 'Payment before maturity is at the risk of the party making it, and constitutes no defense against a subsequent bona fide holder for value before maturity.' 3 Rand., Com. Paper §1470. 'Payment can only be made before maturity by consent of both debtor and creditor. And it can only be made with perfect safety at or after the maturity of the instrument, unless the payor receives it in his hands and cancels it; for a payment before maturity is not in the usual course of business; and should the bill or note afterwards, and before maturity, reach the hands of a bona fide holder for value, without notice, such holder could enforce a second payment.' " We recognize the apparent hardship of holding appellee liable for a second payment of this note, but, under the averments of these answers, this is a case where one of two innocent persons must suffer and appellant seems to be, under the cases herein cited, entirely without fault, or at least free from such fault as will charge him with knowledge of appellee's secret defenses to the note purchased. On the other hand, it may be doubted whether appellee is entirely free from fault. The debt which the note represents was originally his. He put the note in circulation and instead of paying it himself he, in effect, authorized and constituted appellant's assignor Fullenweider, his agent, to pay it. Fullenweider paid it before it was due and instead of canceling it, took an assignment thereof without recourse and again put it in circulation and was responsible for its reaching the hands of an innocent purchaser. It appears therefore, that it was by reason of appellee's own acts and provision for the payment of the note that it finally reached appellant, and equity would say that appellee rather

than appellant should suffer. "Where one of two parties must suffer by reason of fraud or *misconduct* of a third person, the loss must fall upon the one who put it in the power of such third person to perpetrate the fraud, or be guilty of the *misconduct.*" (Our italics.) *Galvin* v. *Syfers* (1898), 22 Ind. App. 43, 47, 52 N. E. 96; See, also, *First Nat. Bank* v. *Gibbons* (1893), 7 Ind. App. 629, 35 N. E. 31; 1 Daniel, Negotiable Inst. §§68, 856; 1 Randolph, Com. Paper §230. Upon this question the language of this court in the case of *Galvin* v. *Syfers, supra,* at page 46 is particularly applicable to the facts of this case. "It appears from the answer that appellant delivered the note to her husband, as her agent, to be delivered on condition that a certain indemnity should be obtained. She thus placed the note in the hands of one who had the power and ability to deliver it, even without the indemnity, and this he did. He, as her agent, thus put a negotiable instrument, governed by the law merchant, into circulation; and in the course of business it passed to the appellees, for value, and without notice of any infirmity. There was nothing on the face of the note calculated to put them upon inquiry, and they had a right to take it as a negotiable instrument in the ordinary course of business. Daniel, Negotiable Inst. says: 'But there is a distinction between negotiable and sealed instruments. If the custodian of the former betrays his trust and passes off the negotiable instrument to a *bona fide* holder before maturity, and without notice, all parties are bound; but if the instrument is sealed, the rule is otherwise.' " For these reasons we think the court erred in overruling appellant's demurrer to appellee's answer to the complaint, and in sustaining appellee's demurrer to appellant's answers to appellee's cross-complaint.

Judgment is reversed with instructions to the court below to sustain the demurrer to appellee's answer to the complaint and to overrule the demurrer to appellant's answer to the

cross-complaint, and for such other proceedings as may be consistent with this opinion.

Adams, C. J., Ibach, Lairy, Felt and Shea, JJ., concur.

NOTE.—Reported in 102 N. E. 386. See, also, under (1) 7 Cyc. 587; (2) 7 Cyc. 626; (3) 7 Cyc. 817; (4) 7 Cyc. 943; (5) 7 Cyc. 956; (7) 7 Cyc. 790. As to the effect of endorsement "without recourse," see 87 Am. Dec. 389.