WILLIAM L. WILLIAMSON et al., Appellants, v. EARL H. CRAIG et al., Appellees.

BILLS AND NOTES: Negotiability—Naked Reference to Mortgage.
1 A promissory note, otherwise negotiable, is not rendered nonnegotiable by the insertion therein of a statement to the effect that it is "secured by mortgage."

BILLS AND NOTES: Holdership in Due Course—Sufficiency of Evidence. It is not necessarily true in all cases that a bank must
2 prove its holdership in due course of a negotiable promissory note by the testimony of *all* the officers of the bank. (See Book of Anno., Vol. I, Sec. 9519, Anno. 10 *et seq.*; Vol. II, Sec. 9519.)

BILLS AND NOTES: Holdership in Due Course—Non-evidence of Bad Faith. The fact that the transferee of a negotiable promissory
3 note, when he acquired the note, required the transferor to guarantee its payment furnishes no evidence of a lack of good faith.

PAYMENT: Application of Payments. A mortgagor who executes the
4 mortgage for the mutually understood purpose of securing funds with which to pay off existing mortgages on the premises may not complain if the mortgagee pays off said existing mortgages from the proceeds of the new loan and accounts to him—the mortgagor—for the balance.

WITNESSES: Cross-examination—Examination by Several Counsel.
5 The act of the court in permitting more than one counsel to cross-examine witnesses does not necessarily constitute error, especially when there are several defendants in the case.

Headnote 1: 8 C. J. p. 127.  Headnote 2: 8 C. J. p. 1046.  Headnote 3: 8 C. J. p. 508 (Anno.)  Headnote 4: 30 Cyc. p. 1233.  Headnote 5: 40 Cyc. pp. 2511, 2513.

Headnote 1: 32 L. R. A. (N. S.) 858; 3 R. C. L. 917.

*Appeal from Lee District Court.*—JOHN E. CRAIG, Judge.

OCTOBER 18, 1927.

An action in equity, in which it is sought to cancel a mortgage and note and to quiet title. From a decree in favor of the defendants and interveners plaintiffs appeal.—*Modified and affirmed.*

*Hollingsworth & Hollingsworth, B. F. Jones,* and *Bernard A. Dolan,* for appellants.

*E. W. McManus,* for Earl H. Craig, Pioneer Investment Co., Ernest A. Jackson, Leo V. Stevens, Carl B. Pray, N. M. Hubbard, Royal Union Mutual Life Ins. Assn., State Life Ins. Co., appellees.

• *J. O. Boyd* and *J. C. Calhoun,* for W. C. Donaho, intervener, appellee.

*Thomas J. Guthrie* and *Sawyer & Norman,* for Des Moines Savings Bank & Trust Co., intervener, appellee.

ALBERT, J.—I. In the early part of the year 1923, August A. Zinnert was the owner of a tract of land consisting of 162 2/3 acres, in Lee County, Iowa. This land was at that time incumbered by a first mortgage of $7,500 and a commission mortgage of $375, both executed to the Keokuk Trust Company. Both of these mortgages were due, or presently to become due, and Zinnert was arranging to meet the same and to borrow some additional money. One McCutcheon was a real estate man, and apparently Zinnert turned over to him the negotiation for this new loan. He took the matter up with one C. W. Durrett, vice president of the aforesaid trust company, and application was made on the 17th day of January for a loan of $13,000, which loan was submitted to the Pioneer Investment Company, of Des Moines, and accepted by them. On March 1, 1923, a note for $13,000 was executed by Zinnert and wife to Earl H. Craig, and on the same date a mortgage on the land was executed, to secure this amount. This mortgage was duly recorded, March 16th following, and these instruments, together with the abstract, were forwarded to the Pioneer Investment Company. The Pioneer Investment Company was unincorporated, and was a partnership. For convenience in conducting their loan business, they took all mortgages and notes in the name of Earl H. Craig, who was one of the partners. This loan was presented to the Royal Union Mutual Life Insurance Company for sale, and was accepted by them, but, owing to some reorganization that was pending at that time, this company was not able to handle the loan. Carl B. Pray, vice president and cashier of

this insurance company, presented this proposed loan to the Des Moines Savings Bank & Trust Company, which is intervener in this action. The latter bank purchased said note and mortgage, and paid to Pray the sum of $13,000 in cash for the same. This purchase was made by the Des Moines Savings Bank & Trust Company on the 17th day of April, 1923, and on this date due transfer of the note and mortgage was made to it.

About one year after the execution of the mortgage and note in controversy herein, Zinnert and wife, by warranty deed, conveyed the land in question to plaintiff, William L. Williamson, subject to a mortgage of $7,500 and accrued interest, which the grantees agreed to pay. This deed bears date January, 21, 1924.

The first question raised in the case is whether or not the Des Moines Savings Bank & Trust Company was an innocent purchaser for value before maturity. Under this contention, one of the principal claims is that the note in controversy was not negotiable; therefore the Des Moines Savings Bank & Trust Company could not be an innocent purchaser. The note is in the usual form of a negotiable promissory note, but in addition contains the following clause:

1. BILLS AND NOTES: negotiability: naked reference to mortgage.

"This note is secured by a mortgage deed made by August A. Zinnert and Myra H. Zinnert, (husband and wife) to Carl H. Craig, conveying real estate in Lee County, Iowa."

Among other provisions of the mortgage were:

(1) That the mortgagor would pay reasonable charges of any attorney in whose hands said notes should be placed after maturity for collection, without foreclosure.

(2) That the mortgagor would pay all taxes and assessments of any kind levied on the land or upon the interest of the mortgagee therein, or upon this mortgage or the notes of indebtedness secured thereby.

(4) To keep all buildings at any time on such premises insured against loss by fire, lightning, or tornadoes.

(6) To pay all expenses and disbursements (including a reasonable attorney's fee) occasioned by any suit or proceeding wherein said mortgagee or holder of any of said notes as such may be made a party.

It further provides:

"If the insurance is required and not provided or if said taxes or assessments or rates or expenses, or disbursements are not paid as above agreed, the holder of said principal note may procure such insurance or pay such taxes, assessments, rates, expenses, or disbursements and all money so expended shall be due forthwith without demand; and with interest from the date of payment at the rate of 8% per annum shall be added to and made a part of the debt secured thereby."

It is further provided that, in case of foreclosure proceedings, there shall be included a reasonable attorney's fee, outlay for documentary evidence, and stenographer's charges; and the cost of procuring a completed abstract, showing whole title to said premises, and embracing judgment ordering sale thereof, shall be added to and made a part of the indebtedness secured hereby, and shall be included in any judgment that may be rendered in such proceedings, and such proceedings shall not be dismissed nor release hereof given until such expenses and disbursements have been paid, provided always that, when the said covenants and agreements are performed, premises shall be released from the lien thereof at the expense of the undersigned.

Appellants urge that, because of the above quoted part of the note and mortgage, the note is nonnegotiable, because the amount is uncertain.

In the case of *Des Moines Sav. Bank v. Arthur*, 163 Iowa 205, we had a somewhat similar situation, except that in that case a clause almost identical with the clause in the note in the instant case was not included in the body of the note, but was simply a memorandum on the margin thereof. We held in that case that, under the conditions there existing, the memorandum on the margin of the note did not divest it of its negotiable character.

Later, in the case of *Hubbard v. Wallace Co.*, 201 Iowa 1143, we had a case where the note had similar provisions with reference to the mortgage securing the same as in the case at bar, except that in the *Hubbard* case there was added the statement that the terms of the mortgage are made a part of the note. We there held that the note in controversy was a nonnegotiable instrument.

In the case of *Allison v. Hollembeak*, 138 Iowa 479, the note had an indorsement on the back thereof as follows:

"This note is secured by purchase money mortgage on 160 acres of land in Guthrie County, Iowa, and payee herein agrees to look to mortgage security for payment of this note."

After holding that the writing on the back of the note, having been there at the time it was executed, became a part of it, we held that the instrument was thereby rendered nonnegotiable.

The line of demarcation between these cases seems to be that, if the statements in the note refer to some other instrument for terms and conditions, or make the terms and conditions of some other instrument a part of the note, and the terms and conditions referred to in the other instrument would make the amount due on the note uncertain, then the note would be nonnegotiable; but if the statement in the note is simply a recital of the consideration for which the paper is given, or merely a reference to the origin of the transaction, its negotiability is not affected thereby. *Slaughter v. Bank of Bisbee*, 17 Ariz. 484 (154 Pac. 1040); *Treat v. Cooper*, 22 Me. 203; *Elliott v. Smitherman*, 19 N. C. 338; *Ryland v. Brown*, 2 Head (Tenn.) 270; *Hubert v. Grady*, 59 Tex. 502; *Smilie v. Stevens*, 39 Vt. 315; *Dollar Sav. & Trust Co. v. Crawford & Ashby*, 69 W. Va. 109 (33 L. R. A. [N. S.] 587).

These cases were all decided prior to the passage of the Negotiable Instrument Act.

*People's Bank v. Porter*, 58 Cal. App. 41 (208 Pac. 200); *King Cattle Co. v. Joseph*, 158 Minn. 481 (198 N. W. 798, affirmed on rehearing, 199 N. W. 437); *Continental Guar. Corp. v. Peoples Bus Line*, 1 W. W. Harr. (Del.) 595 (117 Atl. 275); *State Banking Co. v. Morgan*, 30 Ga. App. 430 (118 S. E. 415).

In the case of *Bright v. Offield*, 81 Wash. 442 (143 Pac. 159), the Washington Supreme Court seems to make the same distinction that we have made in our cases, although the exact question was not really involved. It is there said:

"According to what we believe to be the better rule, a mortgage securing a note, though referred to in the note, but without expressly adopting its conditions, is merely ancillary to the note, and the conditions found in the mortgage alone will not change the character of the note as a negotiable instrument. The promise to pay is held to be a distinct agreement from the mortgage, and if couched in proper terms, the note is negotiable. *Thorp v. Mindeman*, 123 Wis. 149, 101 N. W. 417;

107 Am. St. 1003, 68 L. R. A. 146; *Frost v. Fisher*, 13 Colo. App. 322, 58 Pac. 872. This would seem to follow from the provision found in the third section of the negotiable instruments act * * * above quoted. The reference to the mortgage would be a mere 'statement of the transaction which gave rise to the instrument.' "

In the case of *Shanabarger v. Phares*, 86 W. Va. 64 (103 S. E. 349), the notes bore this notation:

"The same being a deferred installment of purchase money on land purchased of said Charles H. Phares and others, and this note is secured by a vendor's lien on said land."

It was contended that this provision of the note made it nonnegotiable, and that the note and deed were to be construed together. The court there said:

"Under the confused notion of a single obligation represented by the two papers, it has been sometimes held that the mortgage may be put in evidence, or in some way relied upon to alter the terms or legal effect of the note, by construction. But the better opinion is that, even though the papers must or may be read and considered together, it does not follow that the provisions of the mortgage were intended as limitations or qualifications of the absolute promise of the note, or must be permitted to have such effect" (citing *Thorp v. Mindeman*, 123 Wis. 149 [101 N. W. 417]; *Frost v. Fisher*, 13 Colo. App. 322 [58 Pac. 872]; *Barker v. Sartori*, 66 Wash. 260 [119 Pac. 611]; *Bank of Carroll v. Taylor*, 67 Iowa 572; 8 Corpus Juris 202).

In *Judy v. Warne*, 54 Ind. App. 82 (102 N. E. 386), the Supreme Court said:

"As a general rule, agreements contemporaneously executed, and pertaining to the same subject-matter, are to be construed together; but we think the courts generally have refused to hold that this rule imports into a promissory note all the collateral agreements that may be contained in the accompanying mortgage given to secure such note."

In *First Nat. Bank v. Mineral Farm Cons. Min. Co.*, 17 Colo. App. 452 (68 Pac. 981), the court had before it a note in the usual form, with this added recitation: "This note is secured by quitclaim deed of this date." It was claimed that the quitclaim deed contained certain limitations which should be

read into the note, by reason of this clause in the note. With reference thereto, that court said:

"The mere notation upon the face of the note, 'This note is secured by quitclaim deed of this date,' did not affect the negotiable character of the note. The note, as it appeared, was an unconditional promise to pay a definite amount on demand, with no suggestion upon its face that these unequivocal terms were modified by any other instrument. The memorandum simply advised that, as an incident to the note, given for the purpose of securing it, and for no other purpose, there was a quitclaim deed. There was no suggestion in this notation of an intention of the parties to restrict the unconditional terms of the note by the quitclaim deed. That this notation did not charge appellant with notice of the terms of the quitclaim deed is fully sustained by the authorities. In *Howry v. Eppinger,* 34 Mich. 29, suit was by an indorsee upon a promissory note. On the margin thereof was written, 'Secured by mortgage.' It was contended that the indorsee was charged with notice of the contents of such mortgage, and that such mortgage contained a condition fatal to recovery. The court said: 'The words "secured by mortgage" formed no part of the notes. The object and intent of the parties in putting these words upon the notes was not to limit or impair their value, but to add to it. It was not to notify third parties that the mortgage contained some clause inconsistent with the notes, and which would destroy or affect their negotiable character. * * * But the principal one (object) was to show that, in addition to the responsibility of the makers, they were also secured by mortgage. If the makers intended to limit the effect of the notes by the terms or conditions of the mortgage securing their payment, they should have done so by language which would admit of no doubt as to its intent and meaning. We think these words were neither sufficient to inform third parties of the contents or terms of the mortgage or to put them upon inquiry. * * * It is not the duty of parties about to purchase negotiable paper to make inquiries as to possible defenses, unless, either from something appearing upon the face of the paper, or from facts communicated to them at the time, they could not honestly purchase without making further inquiry: in other words, that they acted in bad faith.' See, also, *St. Joe and Mineral Farm Company v. First*

*National Bank,* 10 Colo. App. 348, 50 Pac. 1055. In *Biegler v. Merchants Loan & Trust Co.,* 62 Ill. App. 560, it is said: 'The recital by indorsement on the notes that they were secured by a lien upon the maker's interest in certain horses described in a specified agreement, had no effect to put the appellee upon inquiry as to the terms of that agreement. * * * A recital upon a promissory note, to destroy its negotiability, must be of a kind that in some respect qualifies, or makes uncertain or conditional, the promise.' See also 4th Am. and Eng. Ency. of Law, 2d Ed., 141—142.''

Since the adoption of the Uniform Negotiable Instrument Law, and since negotiable instruments have taken such a prominent part in the business of the commercial world, the tendency of the courts is to hold instruments negotiable where they can reasonably be so held. It is apparent from the citation of authorities above that this is the drift of the modern holdings.

Section 3 of the Uniform Negotiable Instrument Act (Section 9463, Code of 1924), provides as follows:

"An unqualified order or promise to pay is unconditional within the meaning of this chapter, though coupled with: * * * 2. A statement of the transaction which gives rise to the instrument.''

Under the above section and the line of modern authorities above quoted, we are holding that the clause in this note about which complaint is made, does not make this note nonnegotiable.

It is further urged that the bank is not an innocent purchaser by reason of the following matters: Capps, cashier of the bank, who bought the mortgage and note and paid therefor,

2. BILLS AND NOTES: holdership in due course: sufficiency of evidence.

testifies to want of notice and knowledge on the part of the bank. With reference to the same, appellant said, in his brief and argument: "And in this case, even though Capps has testified that he had taken care of the transaction by himself, and that no other officer of the bank had any knowledge of the defense to this note, that is not sufficient, as all the bank officers should so testify" (citing several Iowa cases from *Commercial Bank of Essex v. Paddick,* 90 Iowa 63, to and including the case of *German Am. Nat. Bank v. Kelley,* 183 Iowa 269).

We disposed of this matter adversely to the contention of

the appellant herein in the case of *First Nat. Bank v. Dutton,* 199 Iowa 468.

The fact that the Des Moines Savings Bank & Trust Company required an acceptance from the insurance company or a guaranty of the paper is only an incident to the transaction,

3. BILLS AND NOTES: holdership in due course: non-evidence of bad faith.

and is not evidence of a lack of good faith on the part of the bank. We are quite satisfied from the evidence in the case that the district court was right in its conclusion that the Des Moines Savings Bank & Trust Company was an innocent purchaser of this note for value before maturity, and purchased the same in good faith. This being our holding, it necessarily follows that the part of plaintiff's action asking that a decree issue canceling the mortgage and declaring the note void, and that title to the premises be quieted as against said mortgage, must fail.

II. It appears from the record that, in August, 1923, Zinnert became exercised over the fact that he had not received the money due him on this mortgage and note, and he wrote to the Pioneer Investment Company, demanding the money, and later advised them to return the mortgage and note to him. Nothing seems to have resulted from these letters.

When the Des Moines Savings & Trust Company paid the $13,000 to Pray, the evidence shows, Pray turned the same over to the Pioneer Investment Company or Craig; hence the ruling of the district court that the Royal Union Life Insurance Company was not liable is correct.

Equally so was the ruling that there was no liability on the part of the State Insurance Company, because there is no evidence in the record that they in any way had anything to do with this transaction.

The Pioneer Investment Company, in March, 1924, paid the two mortgages held by the Keokuk Trust Company, with interest, and the same were satisfied and released of record.

4. PAYMENT: application of payments.

There is some contention about this matter. It is the claim of plaintiffs that the investment company was an intermeddler, in making this payment to the trust company. However, McCutcheon, who was attending to this business for Zinnert, testifies that the loan was made for the purpose of paying these mortgages to the

Keokuk Trust Company; and for all practical purposes, it makes little difference whether the amount necessary to satisfy said mortgages was sent directly by the Pioneer Investment Company to the Keokuk Trust Company, or whether it was turned over to McCutcheon or Zinnert, and by them applied to the payment. The same result is reached by either method, and we do not think Zinnert can complain, because he received the full benefit of the payment to said trust company.

Zinnert was to take 20 per cent of this loan, or $2,600, in stock in the United Cattle Loan & Live Stock Company. This certificate for 26 shares of the capital stock of said corporation, issued on April 17, 1923, to August A. Zinnert, was tendered in court, and deposited with the clerk; and the district court held that the same was to be delivered to Zinnert, in accordance with his contract.

It was further ordered by the court that Zinnert and wife should recover from the Pioneer Investment Company, Leo E. Stevens, and Ernest A. Jackson the sum of $868.55. This was the balance of the loan of $13,000, after deducting $2,600 for the aforesaid stock in the United Cattle Loan & Live Stock Company, the amount paid to release the two mortgages held by the Keokuk Trust Company, and small incidental expenses in connection therewith. There is little dispute in the evidence as to this stock. The Pioneer Investment Company claimed that it was worth $125 a share, and the district court so calculated the same, in making its deduction. In this we think the court erred. The evidence in the case abundantly shows that this stock was contracted to be taken by Zinnert at par, or $100 a share. It is therefore evident that to the said $868.55 calculated by the court there should be added the sum of $650 for the over-valuation of this stock. The judgment should be increased accordingly.

Complaint is made because the court permitted more than one counsel to cross-examine the same witness. There were numerous defendants in this case, represented by different counsel,

5. WITNESSES: cross-examination: examination by several counsel.

and we do not think the rule contended for by the plaintiff was seriously impinged. More than this, matters of this kind are so largely within the discretion of the lower court that we are not disposed to reverse unless there is evidence of a substantial in-

justice caused thereby.   See *Breiner v. Nugent*, 136 Iowa 322. We do not think, under this record, that appellants suffered any prejudice by the ruling of the court, even though it should be considered that the same was in violation of the rule.

Taking the whole record in the case, we are satisfied that the ruling of the district court was right, except as to the modification suggested above.—*Modified and affirmed.*

EVANS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.