THE BANK OF SAMPSON v. H. B. HATCHER et als.

(Filed 1 December, 1909.)

1. Negotiable Instruments—Endorsee—"Without Recourse"—"Due Course."

An endorsee of a negotiable instrument is not deprived of the position as holder in due course by the fact, and that alone, that said endorsement is in form "without recourse."

2. Same—Vendor and Vendee—Equities—Notice.

An endorsee for value and "holder in due course" of a negotiable instrument given for the purchase price of goods under an executory contract is not subject to equities and defenses existent between the vendor and vendee of which he had no knowledge or notice, and when he was not interested in the goods or the transaction concerning them, otherwise than as such endorsee.

3. Same—Infirmities—Interpretation of Statutes.

An endorsee will not be affected with notice of an infirmity in a negotiable instrument taken from the payee without recourse and arising from a breach of warranty in an executory contract between the original parties, when it does not appear that he was aware of its terms, or there was nothing in the contract restricting the negotiability of the note or indicating fraud or imposition or an existent breach; and this is true though the note or instrument may contain on its face an express statement of the transaction which gives rise to the instrument. Revisal, 1905, sec. 2153. Case of *Howard v. Kimball*, 65 N. C., 175, cited and commented on.

BANK *v.* HATCHER.

APPEAL from *W. R. Allen, J.,* May Term, 1909, of SAMPSON.

Civil action, to recover the amount of a promissory note for $144. On the trial it appeared in evidence for plaintiff that on 16 May, 1907, the defendant executed the note in question for $144 to C. S. Lothrop & Co., payable on 25 November, 1907, with interest at six per cent., for value received, and on 22 May, 1907, the same was endorsed by said payees "without recourse" to the plaintiff bank at a discount of ten per cent.

In the justice's court the defendant filed a written answer, admitting the execution of the note and its endorsement for value to plaintiff at the time stated, and alleged, by way of counterclaim, in effect, that the note was procured by false and fraudulent representations on the part of the payees, of which the plaintiff bank was cognizant at the time of the endorsement. The defendants alleged, further, that the note was given in a transaction in which defendants had bought from payees the right to sell a "safety sash lock," and that there had been a breach of warranty as to the value and salability of such lock, causing damage, and that the damage incident to such breach was available against the plaintiff bank, who was associated in interest with the payees in the contract and had taken part therein.

In support of their counterclaim, the defendants offered testimony tending to show that C. S. Lothrop & Co., payees, held a contract with the Nickel Manufacturing Company, of Illinois, to manufacture the safety locks, and said company had given an accompanying guarantee that the locks would be manufactured "as per sample and be delivered in perfect working order," and to furnish same as they would be ordered by agents, at the contract price of $2 per dozen. Said payees, holders of such contract, had joined in this stipulation, had sold to defendants the exclusive right to sell said lock in the county of Northampton, and, in connection with other agents, to sell the same in Sampson and other counties, and agreed that for every sixty dozen of locks ordered the defendants should have control of an additional county, etc.; that defendants executed the note sued on in pursuance of this contract, and some time thereafter, to-wit, in June or July following, had ordered a quantity of the locks, and, having procured a number of agents, endeavored to sell same. One of defendants, testifying, said that the sample showed a good, well-made, workable lock, but the goods sent were made of inferior material, rough moulded, not smooth, weak spring, would not work, bind, and would not hold the windows, and were worthless and unsalable, and all of them had to be filed before

they would spring; that the agents had to stop, and the locks ordered were left on plaintiff's hands.

It was further agreed upon, as facts relevant to the inquiry, that said contract was delivered to the defendants at the time the note was executed, and as a part of one transaction; that plaintiff bank knew of this fact and of said contract at the time it took the note; that the transaction between defendants and a member of the firm of Lothrop & Co. took place in the law office of H. A. Grady, who was also vice-president of the bank. The said H. A. Grady and the cashier of the bank has a similar contract with the payees, and they had both advised defendants that they thought it was a good thing; that the vice-president and cashier were on the discount committee of the bank, and had passed upon this note; that the note in question was written on a form of the bank, a number of which were in the office of H. A. Grady at the time, and was signed in the office of said H. A. Grady; that an arrangement had been made with plaintiff to discount at ten per cent. all these notes by Lothrop & Co., and that these payees left the State on 25 May, 1907, and had not since returned. There was also testimony to the effect that H. A. Grady and the cashier had made inquiry and received assurances to satisfy them of the standing and solvency of Lothrop & Co., and there was no evidence that this information was incorrect.

At the close of the testimony, and on the additional facts agreed upon, the court charged the jury, if they believed the evidence, they would render a verdict for plaintiff. Verdict for amount of the note and interest. Judgment on the verdict, and defendant excepted and appealed.

*Faison & Wright* and *F. R. Cooper* for plaintiff.
*George E. Butler* for defendant.

HOKE, J., after stating the case: There was no evidence tending to establish any breach of contract at the time plaintiff became endorsee for value of the note sued on, the testimony showing that the locks were not ordered by defendant until June or July following, and the defects complained of were not disclosed until some time thereafter. Nor was there any testimony amounting to legal evidence to show that the plaintiff bank was interested with the payees in their transaction with defendants, otherwise than as endorsees of the notes, nor to show fraud on the part of the bank in connection with the matter, or any knowledge or notice of it. On the contrary, while the trade was made in the law office of H. A. Grady, Esq., who was at the time

vice-president of the bank, it appears that said Grady and the cashier of the bank had made a contract with Lothrop & Co. similar to that of defendants, and had taken the precaution to inquire as to the business standing and solvency of the payees, and had received assurances that both were good, and there was nothing offered to show that these assurances were untrue.

There are several well-considered decisions of the Court which support this view of the facts in evidence, among others, *Farthing v. Dark,* 111 N. C., 243; *Applegarth v. Tillery,* 105 N. C., 407; and our statute on the subject (Revisal, sec. 2205) is conclusive:

"2205. Actual Knowledge Necessary to Constitute Notice of Infirmity. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts, that his action in taking the instrument amounted to bad faith."

It has further been held with us (*Evans v. Freeman,* 142 N. C., 61) that the form of the endorsement, "without recourse," does not affect the question, and the defense indicated in the counterclaim can only be sustained, if at all, on the ground that at the time of the endorsement the plaintiff bank was cognizant of the fact that defendant's obligation arose out of an executory contract and was aware of its terms, and when there was nothing in such contract restricting the negotiability of the notes nor to indicate fraud or imposition or an existent breach; and the correct doctrine is against the defense suggested, on the principle stated and upheld in *Mason v. Cotton Co.,* 148 N. C., 492. Even when such a notice appears on the face of the note, the authorities are against defendant's position. *Siegel v. Bank,* 131 Ill., 569; *Ferriss v. Tarbel,* 87 Tenn., 386; *Bank v. Barret,* 38 Ga., 126.

The only decision we find which tends to support a contrary view is one in our own Reports (*Howard v. Kimball,* 65 N. C., 175). An examination into the facts of that case will disclose that the assignee of a note which expressed upon its face that it was given as purchase money of a certain tract of land not only had actual notice of the defect of title at the time he purchased, but he had taken a deed for such defective title from the original vendor, and held same, to be conveyed to the vendee when the note was paid. The case, therefore, is undoubtedly well decided; but, in so far as the opinion gives countenance to the position that a defect of title is available against an endorsee for value of a note for the purchase money, from the fact, and from that

alone, that the note on its face is expressed to be for the purchase money of land or a given tract of land, the case is not in accord with the better-considered decisions. As an authority for such a position, it was in effect disapproved by a subsequent decision of this Court, in *Bank v. Michael, 96 N. C., 53,* in which a note of that kind was held to be "negotiable"; the term "negotiable" being used in the sense that an endorsee for value, without notice, *ultra,* became the owner of the note, unaffected by the equities and defenses existent between the original parties to the contract.

Our present statute on the subject would seem to put the matter at rest (Revisal 1905, ch. 54, sec. 2153). This, being one of the sections defining what constitutes negotiability of notes, provides:

"2153. What Promise Unconditional. An unqualified order or promise to pay is unconditional, within the meaning of this chapter, though coupled with (1) an indication of a particular fund, out of which reimbursement is to be made or a particular account to be debited with the amount, or (2)·*a statement of the transaction which gives rise to the instrument.* But an order or promise to pay out of a particular fund is not unconditional."

There was no error in the charge of the court or in the trial of the cause, and the judgment below is affirmed.

No error.