This is an action upon a note executed by the defendant, and payable to the order of Albert O. Tracy, for the purchase price of a horse.
(334) The plaintiff alleged that the note was transferred for value and before it was due, by indorsement to Coleman Son, and by Coleman Son to the plaintiff.
The defendant denied the indorsement by Tracy, and alleged that the note was procured by false and fraudulent representations.
Defendants further alleged that the note was not to become effective until and unless it was signed by fourteen solvent persons, the plan of sale being that fourteen men would take shares of $200 each, making up the total purchase price of $2,800, and it was only signed by eleven men, some of whom were not solvent.
The evidence as to the indorsement of the note was as follows:
Charles R. Coleman testified: "I reside at Wayne, Illinois, and am engaged in importing and breeding percheron horses, and farming. I am associated with my sons in business under the firm name of Charles R. Coleman Sons. On 13 February, 1910, I purchased from Alvin O. Tracy the note of Robert A. McEachern et al. (The note was exhibited to him and is the same note sued on in this case.) I accepted this note, the face value thereof with accrued interest thereon, in payment for an imported stallion. Mr. Tracy gave me the bank letter from the Bank of Red Springs at the same time that I bought the note. The *Page 269 
purchase price of the horse I sold Tracy was something like $1,000. I inquired about the note from Tracy, and he satisfied me that the makers were solvent and responsible. I made no inquiry as to what the note was given for. He recommended it so highly that he said he had just as soon put his name across the back of the note. He said he would put his name on the back of the note."
The jury returned the following verdict:
"1. Did the plaintiff become the holder of the note sued on before overdue and without notice that it had previously been dishonored, and did it take it in good faith and for value, without notice of any infirmity or defect in the same? Answer: No.
"2. Is the plaintiff the equitable owner of the note sued on? Answer: Yes.
"3. Did the defendants sign the note sued on with the agreement (335) made at the time that the note should be surrendered in the event Tracy or his agent, James, failed to procure the signature of fourteen solvent or responsible parties to said note? Answer: Yes.
"4. Was the execution of the note sued on procured by false and fraudulent representations, as alleged in the answer? Answer: Yes."
The plaintiff requested the following special instructions to be given to the jury by his Honor:
"1. If the jury shall find from the evidence that the note in question was, on 13 February, 1910, sold and delivered, for value, by Alvin O. Tracy to Charles R. Coleman Sons, and on 10 May, 1910, the same was indorsed, sold, and delivered by said Coleman Sons to the Elgin City Banking Company, for value, the said plaintiff is presumed to be the holder of said note in due course." His Honor refused to give this instruction, and the plaintiff excepted.
"2. If the jury shall find from the evidence that the Elgin City Banking Company had no knowledge of any fraud or defect in the execution of said note, at the time of the purchase of same from said Coleman Sons, and that said note was indorsed by said Coleman Sons and delivered, for value, before maturity, to plaintiff, the said Elgin City Banking Company will be presumed to be the holder of said note in due course." His Honor refused to give this instruction. Plaintiff excepted.
His Honor charged on the first issue: "In order for the plaintiff to be the holder of the note in due course, it is necessary for the plaintiff to show to you from the evidence, and by its greater weight, that it is a purchaser of the note for a valuable consideration, and before it is due; and in order to constitute the plaintiff a holder in due course, it is necessary that it should be indorsed by the payee on the note, and when the indorsement is denied, it devolves upon the plaintiff to prove the indorsement, by the greater weight of the evidence. So that, one of the first *Page 270 
questions for you to inquire into is whether or not the note was indorsed by Tracy to Coleman. The evidence touching the indorsement, (336) and the only testimony in regard to that, is contained in the deposition of Coleman, and it is contained in that portion of the deposition in which the question is asked, `Was there any contract between you and A. O. Tracy or between the firm of C. R. Coleman Son and A. O. Tracy, at or prior to the indorsement of this note, that the note should be returned if it is not good, and he recommended it so highly that he had said he had just as soon put his name across the back?' There was nothing said about the indorsement on the note, he said he would put his name on the back of the note; that is all the evidence touching the question of indorsement. It is contended on the part of the defendants that it was only a promise to put it on the back of the note, and there is no evidence that he actually did write his name on the back of the note, but he only agreed to do it, without any proof that he did so. If, upon the evidence, you shall be satisfied by its greater weight that he indorsed the note, then it would be your duty to find that as a fact in consideration of the first issue; but if the proof does not satisfy you by its greater weight, when you come to examine that part of the testimony, and you fail to find that it was indorsed by A. O. Tracy — not that his name was on it, but if he put his name on it himself — then it will become your duty to answer the first issue `No,' because unless it was indorsed by the payee, A. O. Tracy, the legal title would not pass to Coleman, and could not by Coleman's indorsement pass to the plaintiff. If you should find that the note was indorsed, then it was purchased for a valuable consideration, without notice of its infirmity."
Judgment was entered upon the verdict in favor of the defendants, and the plaintiffs excepted and appealed.
As the note sued on is payable to order and not to bearer, the indorsement by Tracy was necessary to pass the title to Coleman 
Son, freed of the equities and defenses of the makers against the payee, and without such indorsement the holders of the note were only (337) the equitable owners, and subject to these defenses (Revisal, sec. 2178; Tyson v. Joyner, 139 N.C. 72), and the jury, under proper instructions, has found in answer to the first and second issues that the indorsement was not made. Coleman Son then became the equitable owners of the note under the findings of the jury, subject to the legal *Page 271 
defenses of the defendants against Tracy, and as they could not sell more than they owned, the plaintiff took the note by purchase from Coleman Son with the same infirmity attached.
It follows, therefore, that the prayers for instruction requested by the plaintiff were properly refused, as they were predicated upon the idea that the plaintiff was a holder in due course and was the owner of the legal and equitable title.
In this view of the case, it is not necessary to consider the first four exceptions to evidence, as they all bear on the question of good faith on the part of the plaintiff, and its notice of fraud, which was immaterial if the plaintiff was only the equitable owner.
It also appears that his Honor charged the jury that the plaintiff had no actual notice of any fraud.
The letter offered in evidence was properly excluded, as the declaration of a stranger and hearsay, but if admitted, it could have had no bearing on the case except to show good faith on the part of Coleman Son in the purchase of the note, and good faith could have added nothing to their title if there was no indorsement.
There are many other exceptions in the record, most of them being directed to the evidence to prove false and fraudulent representations.
We have examined all of them, and find nothing that will justify a reversal of the judgment.
The evidence of fraud is stronger than in many of the actions on so-called "horse notes" that have been before us.
No error.
(338)