B. A. CRITCHER, TRUSTEE, J. B. GILLIAM, AND F. M. DUNSTON v. P. A. BALLARD.

(Filed 29 September, 1920.)

1. **Bills and Notes— Negotiable Instruments — Covenants — Equities — Statutes.**

The character of a promissory note in the hands of a holder in due course will not be destroyed or impaired by the mere statement thereon of an executory contract on the part of the payer growing out of the transaction in which it is given, when it otherwise complies with the requirements of paper of that class; and where the instrument, given for a horse, otherwise complies with the requirements of negotiability, a certain statement of warranty of the horse therein will not admit of the application of any equities existing between the original parties when the instrument is in the hands of an innocent purchaser for value in due course; and the principle as to whether such person were put upon inquiry of the equity of the matter by the statement he had made upon the face of the instrument has no application to transactions of this character. Rev., 2153.

CRITCHER *v.* BALLARD.

**2. Bills and Notes—Negotiable Instruments—Title—Endorsement.**

In order to a proper negotiation of a commercial instrument payable to order, so as to shut off equities and defenses existing between the original parties, it must be endorsed by the holder, or by some one for him duly authorized, by writing the name of the holder on the instrument itself, usually on the back thereof, or on some paper physically attached thereto at the time the endorsement was made. Rev., 2178, 2198, 2206, 2212.

**3. Same—Equity.**

Where the title to a negotiable instrument, payable to a certain person, or order, has not been transferred to a purchaser, by endorsement, the latter has acquired only an equity to have the transaction completed by endorsement, and until then he takes subject to the equities existing between the original parties.

CIVIL ACTION, tried before *Bond, J.,* and a jury, at June Special Term, 1920, of MARTIN.

The action is by Gilliam & Dunstan, claiming to be holders for value in due course of a promissory note for $300 executed by defendant, P. A. Ballard, to one O. Ames.

In the verified complaint of plaintiff, the note and the facts pertinent to the acquisition of same, by Gilliam & Dunstan, are set forth as follows:

$300.00.                    WILLIAMSTON, November 17, 1915.

On or before the 1st day of November, 1916, I promise to pay to the order of O. Ames the sum of three hundred dollars, with interest from date till paid, at 6 per cent per annum, payable annually. For value received. The payment whereof is secured by a deed of trust to B. A. Critcher, trustee, on real estate and personal property of even date herewith. This note is for the purchase of stallion, and said Ames warrants him to be free from incumbrances, and that he is solid, sound, and gentle, and work anywhere.                    P. A. BALLARD. [SEAL.]

Endorsements: Pay to J. B. Gilliam and F. M. Dunstan, without recourse to me.

Credits: ................... day of ..................., 19......... $...................

"2. That the plaintiffs, J. B. Gilliam and F. M. Dunstan, are purchasers for value of said note, without notice of any equities or defense that may exist in favor of the maker, P. A. Ballard."

In the answer the defendant admits the execution of the note sued on, denies the acquisition for value by Gilliam & Dunstan, and sets up a counterclaim growing out of breach of warranty in the sale of horse referred to on the face of the paper.

The following issues were prepared for submission to the jury:

"1. Was there a breach of the warranty made as to the stallion by O. Ames, as alleged?

"2. If so, what damage, if any, did the defendant Ballard sustain thereby?

"3. Did plaintiffs take said note in due course, for value, before maturity and without notice of any equities existing in favor of defendant Ballard, as alleged?"

On the hearing the execution of the note and possession thereof by Gilliam & Dunstan were admitted, and there were facts in evidence tending to show that the purchasers of the note had acquired the same for full value, and before maturity.

His Honor, being of opinion that the warranty of the stallion appearing on the face of the note did not destroy or impair its negotiability, charged the jury that if they believed the testimony and should find the facts to be as the evidence tended to prove, they would answer the third issue "Yes," and, in that case, they need not consider the first and second issues.

The jury answered the third issue "Yes," and, thereupon, judgment was entered for plaintiffs Gilliam & Dunstan, the amount of the note reduced by proceeds of certain personal property, sold pending litigation and applicable to its payment.

Defendant excepted and appealed, assigning errors.

*No counsel for plaintiff.*
*Dunning & Moore for defendant.*

HOKE, J. It is recognized in the better considered decisions on the subject that the mere statement of an executory contract on the part of the payee, growing out of the transaction in which a promissory note is given, will not, of itself, and without more, destroy or impair the negotiability of the note when it otherwise complies with the requirements of that class of paper.

The question was presented to this Court in *Bank v. Hatcher,* 151 N. C., 359, where defendant, the promissor, sought to set up a claim for damages for breach of contract in the sale of goods by sample, and it was shown that the bank that held the notes by endorsement and for value before maturity was aware of the stipulations of the executory contract out of which defendant's claim arose, but not of any breach of the same, and it was held that the counterclaim was not available as against the bank. After referring to several decided cases in support of the position, the Court cites, as controlling on the subject in this jurisdiction, the section of the negotiable instrument act more directly applicable, to the effect that a definite promise to pay is not rendered conditional so as to impair negotiability by a statement of the "transaction which gives rise to the instrument." As said in *Mayers v. Mc-*

CRITCHER *v.* BALLARD.

*Rimmons,* 140 N. C., 640-642: "This statute, enacted in 1899 with a view of introducing some uniformity in this important feature of the law-merchant, is in the main only a compendium of established custom concerning negotiable instruments as construed and applied in the best considered decisions of the Courts," and the clause in question here, sec. 2153, and the cases it embodies and interprets, is in full support of his Honor's ruling that the negotiability of the note was not destroyed or sensibly impaired by reason of containing á statement of a warranty on the part of Ames, the original payee. *Bank v. Hatcher, supra,* and cases cited; *McKnight v. Parsons,* 136 Iowa, 390; *Hakes v. Thayer,* 165 Mich., 476; *Black v. Bank,* 96 Md., 399; *Buchanan v. Wren,* 10 Texas Civ. App., 560; *Jennings v. Todd,* 118 Mo., 296; *Cooper & Co. v. Chicago Trust Co.,* 131 Ill., 569; Calvert's· Daniels on Negotiable Instruments, sec. 795-b.

It was earnestly insisted for defendant, in support of his position, that the appearance of the warranty on the face of the note was sufficient to put a prudent man on inquiry, and that he·should be charged with knowledge of all the pertinent facts that such inquiry· would have disclosed, but where a commercial paper has been properly negotiated, this principle of putting a prudent man upon notice is not the rule by which the rights of one claiming to be a holder in due course shall be determined. In *Smathers v. Hotel Co.,* 162 N. C., 346, in which section 2205 of the negotiable instrument act was construed and applied, the Court held: "That to constitute notice of infirmity of a negotiable instrument, the holder or transferee for value before maturity must have had actual knowledge thereof, or of such facts that his action in taking it amounted to bad faith and notice that would put a reasonably prudent man upon inquiry is insufficient."

While we approve his Honor's charge in the respects suggested, we are of opinion that there was error in withdrawing the question of the breach of warranty from the consideration of the jury, on the ground that on careful perusal of the record it appears that the note has not been properly negotiated, in that same has never been endorsed by the payee, or by any one for him, and, therefore, the plaintiffs, Gilliam & Dunstan, cannot maintain the position of holders in due course. In various sections of the negotiable instruments act, Rev., ch. 54, and authoritative decisions construing the same, it is contemplated and clearly provided that in order to a proper negotiation of a commercial instrument, payable to order, so as to shut off equities and defenses, as between the original parties, it must be endorsed by the payee, or by some one for him, duly authorized, and this endorsement must be made by writing the name of the payee on the instrument itself (usually on the back of same), or on some paper physically attached thereto at the time of

endorsement made.   Rev., ch. 54, secs. 2178, 2198, 2206, 2212; *Midgette v. Basnight,* 173 N. C., 18; *Banking Co. v. McEachern et al.,* 163 N. C., 333; *Mayers v. McRimmon,* 140 N. C., 640; *Tyson v. Joyner,* 139 N. C., 69.   In section 2178 it is expressly provided: "That an instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof.   If payable to bearer, it is transferred by delivery; if payable to order, it is negotiated by the endorsement of the holder, and completed by delivery."   And in section 2198: "Where the holder of an instrument payable to his order transfers it for value without endorsing it, the transfer vests in the transferee such title as the transferer had therein, and the transferee acquires, in addition, the right to have the endorsement of the transferer. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the endorsement is actually made."   Without such endorsement, the cases uniformly hold that the holder only acquires the equitable title, and his claim is subject, as stated, to the equities and defenses existent between the original or prior parties.   *Bank v. McEachern, supra; Jenkins v. Wilkinson,* 113 N. C., 532.

In section 1 of the complaint, which purports to set out the note and all entries thereon in *ipsissimis verbis,* the alleged endorsement is given as follows: "Endorsements: Pay to J. B. Gilliam and F. M. Dunstan without recourse on me."   And the allegations of section 2 are as follows: "That plaintiff, Gilliam & Dunstan, are purchasers for value of said note without notice of equities," etc.

It thus appears that the signature of the payee has never been placed on the instrument by the payee or by any one for him, and that plaintiffs being only the holders of the equitable title, the defense set up in the counterclaim should be considered and determined.

For the error indicated, there must be a new trial of the cause, and it is so ordered.

New trial.