### IVORY v. LAMOREAUX.

1. BILLS AND NOTES—NEGOTIABILITY—REFERENCE TO ANOTHER INSTRUMENT RENDERS NOTE NOT NEGOTIABLE.

Under the negotiable instruments law, a promissory note containing the words, "This note is collateral to stock subscription number............of even date herewith," written upon its face, is not negotiable, since it clearly refers to another instrument which must be taken into consideration by the buyer of the note. FELLOWS and WIEST, JJ., dissenting.

2. CORPORATIONS—CONTRACTS—OFFER AND ACCEPTANCE—SUBSCRIPTION FOR STOCK SUBJECT TO APPROVAL NOT BINDING WHERE NEVER APPROVED.

Where a subscription for stock was subject to the approval of the company, which was never given, it was merely an offer to subscribe which was never accepted, and therefore no binding contract resulted.

Error to Lapeer; Boomhower (Xenophon O.), J.,

[1]Bills and Notes, 8 C. J. § 212; 30 L. R. A. (N. S.) 40; L. R. A. 1918B, 632; 14 A. L. R. 1121; 33 A. L. R. 1174; 3 R. C. L. 883, 884; 1 R. C. L. Supp. 910; 4 R. C. L. Supp. 220; 5 R. C. L. Supp. 207; 6 R. C. L. Supp. 203; [2]Corporations, 14 C. J. § 771.

presiding.    Submitted June 16, 1927.    (Docket No. 24.)    Decided January 3, 1928.

Assumpsit by Earl S. Ivory and others, copartners as the Citizens' Bank of Hadley, against Thomas E. Lamoreaux and another on a promissory note. Judgment for defendants. Plaintiffs bring error. Affirmed.

*Theo. D. Halpin,* for appellants.

*Herbert W. Smith,* for appellees.

McDONALD, J.    The plaintiffs are doing business as the Citizens' Bank of Hadley, Michigan. They brought this suit to recover the amount of a promissory note, given by the defendants to the Equator Oil Range Company for $500. The note was executed on October 23, 1923, and was payable on the first of May, 1924. On its face, it was stated that it was collateral to a stock subscription of even date therewith. It was indorsed by the payee to the plaintiff bank. The defense was that the note was procured by fraud; that it was without consideration; that it was given as collateral to a stock subscription and was therefore nonnegotiable; that there was no liability on the stock subscription contract because it had not been completed by acceptance of the company; and that no stock had been delivered to the defendants or tendered to them. At the conclusion of the proof, both parties moved for a directed verdict. The court directed the verdict in favor of the defendants. Judgment was entered on the verdict. The plaintiffs have brought error.

The plaintiffs' right to recover in this case depends upon the negotiability of the note on which they sue. If it is a negotiable instrument, they are holders in due course and are entitled to recover the full amount

of the note.     If it is not negotiable, they hold it subject to any legal defense which the defendant would have against it if it were still in the hands of the Equator Oil Range Company.

The note is not negotiable.     It refers to another collateral instrument which must be read in connection with it.     On its face is the statement:

"This note is collateral to stock subscription number . . . . . . . . . . . . . . of even date herewith."

This statement was notice to the plaintiffs of another contract which they were bound to take into consideration in buying the note.     If there was any uncertainty about the makers' liability on the face of the subscription contract, it would be repugnant to the certainty of the promise in the note.

In *Costelo* v. *Crowell*, 127 Mass. 293 (34 Am. Rep. 367), it was said:

"The words written upon the face of the note, 'given as collateral security with agreement,' being incorporated in and made part of the contract, indicate with clearness that there may be a contingency, to wit: the performance of the undertaking to which this is collateral, in which it would not be payable; and so it lacks that element of negotiability which requires that at all events a sum certain shall be payable at a certain time."

See, also, 8 C. J. p. 120; 3 R. C. L. p. 883, § 69.

The test of negotiability would seem to be whether there was an uncertainty in the subscription contract that would render uncertain the express promise in the note to pay unconditionally and at all events a certain sum in money.     A reference to the terms of the stock subscription contract will show that certainty of payment depended upon the approval of the contract by the Equator Oil Range Company, and no approval appears on the face of the instrument.     There was no binding agreement to pay until the approval

was made by the company. The subscription was merely an offer to subscribe, which offer was never accepted by the company by word or act. The subscriber never became bound to pay for the stock. The company never became bound to issue stock to him. If the defendant were here suing to enforce his subscription, the company could truthfully say that it never accepted him as a stockholder. If the note had remained in the hands of the company, the defendant could not have been compelled to pay. It is subject to the same defense in the hands of the plaintiffs.

The claim that this defense was not open to the defendants, because no affidavit denying the execution of the note was filed, has no merit. No other questions require discussion.

The judgment is affirmed, with costs to the defendants.

CLARK, BIRD, and SHARPE, JJ:, concurred with McDONALD, J.

FELLOWS, J. (*dissenting*). I am persuaded that under the provisions of the negotiable instruments law the note in question is negotiable. Section 3 of the act (2 Comp. Laws 1915, § 6042) provides:

"An instrument, to be negotiable, must conform to the following requirements: * * *
"*Second,* It must contain an unconditional promise or order to pay a certain sum of money."

Section 5 of the act (2 Comp. Laws 1915, § 6044) provides:

"An unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with: * * *
"*Second,* A statement of the transaction which gives rise to the instrument."

The note in full is as follows:

"No. 8132.                                            $500.00
            "Richmond, Michigan, October 23, 1923.
    "For value received, I promise to pay to the order of
the Equator Oil Range Company, a Michigan corpora-
tion, the sum of five hundred dollars on the first day of
May, 1924.
    "At Richmond, Michigan.
    "This note is collateral to stock subscription number
. . . . . . . . . . . of even date herewith.    Interest at X per
cent. per annum.
                            "T. E. LAMOREAUX
                            "MAUDE LAMOREAUX."

. I think the statement found in this note is in sub-
stance and effect a statement of the transaction out
of which the instrument arose, and does not deprive
the note of its negotiability.    It will be noted that
there is an unconditional promise to pay in the in-
strument, and unless we can say that the added
statement by the language used made the instru-
ment subject to the terms of the original agreement
between the parties, the instrument falls within
the provisions of the act and is negotiable.    The
Massachusetts court went very far in the case cited
by my Brother (*Costelo* v. *Crowell*, 127 Mass. 293 (34
Am. Rep. 367).    In the opinion in that case the court
recognized that there was a conflict in the authorities,
but held that its former cases had laid down a rule
which it thus stated:

    "In this Commonwealth, however, it is settled by an
uninterrupted series of decisions, that any language,
put upon any portion of the face or back of a promis-
sory note, which has relation to the subject-matter of
the note, by the maker of it before delivery, is a part
of the contract; and that if by such language payment
of the amount is not necessarily to be made at all
events, and of the full sum in lawful money, and at
a time certain to arrive, and subject to no contingency,
the note is not negotiable."

    But that court held in a later case (*National Bank
of Newbury* v. *Wentworth*, 218 Mass. 30 [105 N. E.

626]) decided after the adoption of the negotiable instruments law and giving it effect (I quote from the syllabus) :

"The words 'as per terms of contract,' written after the words 'Value received' on the face of a promissory note by the maker before its delivery, do not destroy the negotiability of the note or make its payment to a holder in due course conditional upon the performance of a contract intended to be referred to by the maker." ·

I think it will be gleaned from an examination of the authorities that where the payment of the note is by its terms made subject to the conditions of another contract, it is then uncertain in its terms of payment and nonnegotiable; but where the credit of the maker is pledged to its payment, it is not deprived of its negotiability because it recites that there is a collateral agreement out of which it arose or which furnished the basis of its consideration.

In *Siegel, Cooper & Co.* v. *Savings Bank,* 131 Ill. 569 (23 N. E. 417, 7 L. R. A. 537, 19 Am. St. Rep. 51), the note was as follows:

"$300.                    Chicago, March 5, 1887.
"On July 1, 1887, we promise to pay D. Dalziel, or order, the sum of three hundred dollars, for the privilege of one framed advertising sign, size ...... x ...... inches, one end of each of one hundred and fifty-nine street cars of the North Chicago City Railway Co., for a term of three months, from May 15, 1887.
                    "SIEGEL, COOPER & CO."

It was held that the note was negotiable and it was said:

"The mere fact that the consideration for which a note is given is recited in it, although it may appear thereby that it was given for or in consideration of an executory contract or promise on the part of the payee, will not destroy its negotiability, unless it appears, through the recital, that it qualifies the promise to pay,

and renders it conditional or uncertain, either as to the time of payment or the sum to be paid."

In *Slaughter* v. *Bank of Bisbee*, 17 Ariz. 484 (154 Pac. 1040), the note contained this statement: "For payment under contract of even date." The negotiable instruments law had been adopted in the State. It was held that the note was negotiable, and it was said:

"A promissory note, therefore, is not divested of its negotiable character if in addition to its ordinary provisions there is inserted a reference to the transaction out of which it arose, or a recital of the consideration for which it was given. The usual way to condition or to make contingent a promise to pay is to use language clearly carrying that intention and purpose either by direct expression or by reference to some extrinsic contract in such manner as to make the payment of the note subject to the terms and conditions of the contract."

The negotiable instruments law has been adopted in Washington. In *First National Bank* v. *Sullivan*, 66 Wash. 375 (119 Pac. 820, Ann. Cas. 1913C, 930), the note contained the following:

"This note is given to take up the freight and rehandling of N. P. Car 43607 and proceeds of from resale of said car shall apply on this note."

It was held:

"The reference to the consideration of the note, and the direction to apply the proceeds of the resale of the shingles thereon, must, therefore, be construed in the same manner, and as having the same effect as under the law merchant at common law. The true test in every case is, and was at common law, does the general credit of the maker accompany the instrument? If it does, the note is negotiable, otherwise it is not. * * *
"The negotiability of notes and drafts is favored in law, and whenever the promise can be held unconditional without doing violence to the ordinary meaning of the language used, it will be so held."

Without quoting further from the authorities, it will suffice to call attention to some of the statements found in notes which have been held not to defeat their negotiability.  In the following cases the notes have been held to be negotiable: where the note recited it was "accepted for payment as per Reola contract for amount and date shown thereon," *International Finance Co.* v. *Northwestern Drug Co.*, 282 Fed. 920; where the note stated that it was given for the second installment of the purchase price of a crane "according to specifications of their representatives," *Merchants National Bank* v. *Santa Maria Sugar Co.*, 162 N. Y. App. Div. 248 (147 N. Y. Supp. 498); where it was recited that it was given as third payment on purchase price of a plantation "as per agreement," etc., *Bank of Sherman* v. *Apperson & Co.*, 4 Fed. 25; where it was recited that it was given in payment on a contract, *Metropolitan Nat. Bank* v. *Vanderpool* (Tex. Civ. App.), 192 S. W. 589; where the note recited that it was given for the purchase price of a stallion with a warranty, *Critcher* v. *Ballard*, 180 N. C. 111 (104 S. E. 134); for a like sale but without warranty, *Welch* v. *Owenby*, 73 Okla. 212 (175 Pac. 746); where the instrument bore the notation "to be used in part renewal of note," *Howard Co.* v. *Bank of St. Louis*, 198 Mo. App. 284 (200 S. W. 91); where the note contained the words "as per contract," *Snelling State Bank* v. *Clasen*, 132 Minn. 404 (157 N. W. 643); *Waterbury-Wallace Co.* v. *Ivey*, 163 N. Y. Supp. 719; *Strand Amusement Co.* v. *Fox*, 205 Ala. 183 (87 South. 332, 14 A. L. R. 1121).

*Contra, Continental Bank & Trust Co.* v. *Times Pub. Co.*, 142 La. 209 (76 South. 612, L. R. A. 1918B, 632), on rehearing.   See, also, *Doherty* v. *Perry*, 38 Ind. 15; *First National Bank* v. *Michael*, 96 N. C. 53 (1 S. E. 855); *Citizens Nat. Bank* v. *Buckheit*, 14 Ala. App. 511 (71 South. 82); *Coleman* v. *Valentin*, 39 S. D.

323 (164 N. W. 67) ; *Chicago Railway Equipment Co.* v. *Merchants' Bank,* 136 U. S. 268 (10 Sup. Ct. 999).

In *Markey* v. *Corey,* 108 Mich. 184 (36 L. R. A. 117, 62 Am. St. Rep. 698), the note contained this language:

"This note is given in accordance with the terms of a certain contract under the same date, between the same parties."

This court held that the note was negotiable.

I have noted that where the note and its payment is by its terms "subject" to a contract between the parties, then the promise of the maker is not unconditional and the note is not negotiable. Among the cases so holding see *Cushing* v. *Field,* 70 Me. 50 (35 Am. Rep. 293) ; *Northwestern National Ins. Co.* v. *Fertilizer Co.,* 20 Ga. App. 506 (93 S. E. 157) ; *Rieck* v. *Daigle,* 17 N. D. 365 (117 N. W. 346) ; *McComas* v. *Haas,* 107 Ind. 512 (8 N. E. 579) ; *Klots Throwing Co.* v. *Manufacturers' Commercial Co.,* 179 Fed. 813 (30 L. R. A. [N. S.] 40). In the last cited case, while the court held that the promise was conditional because made "subject" to the terms of a contract, the general rule provided in the negotiable instruments law was recognized. It was said:

"Manifestly if the provision 'subject to terms of contract between maker and payee' constitutes merely a reference to the agreement or a statement of the consideration for the note, it does not impair the negotiability of the latter. So, if it merely constitutes notice of the existence of the contract and not of the breach thereof, it would not affect negotiability."

The statement in the note was notice to the purchaser that there was a collateral contract, but it was not notice that it had been breached. *Miller* v. *Ottaway,* 81 Mich. 196 (8 L. R. A. 428, 21 Am. St. Rep. 513) ; *East Lansing State Bank* v. *Keil,* 213 Mich.

17.    I think the trial judge should have directed a
verdict for plaintiffs.

If I am right in this conclusion, the judgment should
be reversed, with a new trial, and with costs of this
court to plaintiffs.

WIEST, J., concurred with FELLOWS, J.

The late Justice SNOW and Justice STEERE took no
part in this decision.