HOME STATE BANK, Appellant, v. GORDON B. MARTIN et al.,
Appellees.

**BILLS AND NOTES:** Delivery—Conditional Delivery. It is a fraud—
1  a breach of faith—for the payee of notes given to an assumed
agent of a landowner for the purchase price of the land to transfer
the notes, when the contract was made conditional on the approval
of the owner, and such approval was never given.

**BILLS AND NOTES:** Negotiability—Executory Agreement. The nego-
2  tiability of a negotiable promissory note is not affected by the mere
fact that it is given pursuant to an unperformed executory agree-
ment.

**BILLS AND NOTES:** Actions—Directed Verdict. A directed verdict
3  should not be ordered when the evidence presents a jury question
on the issue as to whether the transferee is a holder in due course.

*Appeal from Clay District Court.*—JAMES DELAND, Judge.

DECEMBER 11, 1923.

ACTION upon a negotiable promissory note. Verdict for de-
fendants, by direction of the court. Plaintiff appeals.—*Re-
versed.*

*Helsell & Helsell* and *Cornwall & Cornwall,* for appellant.

*Heald, Cook & Heald* and *Morling, & Morling,* for appellees.

STEVENS, J.—This is an action upon a negotiable promissory
note for $10,000, which was executed April 20, 1920, contem-
poraneously with a written contract or proposal for the purchase
of 80 acres of land near Garden City, in Scott County, Kansas.
The note is made payable to the makers, and, when offered in
evidence, bore the following indorsement on the back: "Gordon
B. Martin, Anna M. Martin.  Apr. 28-1920.  Paid on this note
$50.00."

Appellant alleged in its petition, and claims, that it pur-
chased the note of the State Bank of Kansas City, before ma-

turity, in good faith, for a valuable consideration, and without notice of any defects in the title thereof. Appellees admitted the execution of the note, and alleged that same was without consideration; that there was a total failure of consideration; and that they were induced to execute the same by fraud practiced upon them by the Francis C. McCarty Land Company and its representatives, with whom the contract or proposal for the purchase of the Kansas land was negotiated and entered into. The contract referred to, on its face, purports to be a proposal by appellees to Francis C. McCarty, as the Francis C. McCarty Land Company, of Chicago, Illinois, to purchase the south half of the southwest quarter of Section 24-19-33. The following excerpts from the contract are essential to a clear understanding of the facts and of the legal propositions requiring decision:

"I, the undersigned, hereafter styled 'the purchaser,' of the town of Peterson, county of Clay, state of Iowa, hereby propose to Francis C. McCarty, as Francis C. McCarty Land Company, of Chicago, Illinois, hereafter styled 'the company,' to purchase the following described real estate, to wit: * * * This proposal if accepted shall become a part of the contract evidenced by the notes and shall be considered as incorporated in and made a part of the notes, and upon default in the payment of any of such notes, or any part thereof, or interest thereon, when the same becomes due and payable, then the entire series of notes given herewith, with interest thereon, shall forthwith become due and payable. The said cash and notes being tendered and received hereunder as earnest money and earnest money notes, given to evidence a portion of the purchase price of the above described property. 'The purchaser' shall not be entitled to the possession of said lands, without written consent, until he has received deed thereto, 'the company' agreeing when one half of the fixed purchase price with interest, has been fully paid by 'the purchaser' to deliver deed to said lands, as hereinafter provided. * * * This agreement is made subject to the approval of the owner of said land, and in the event of the disapproval hereof on the part of the owner, or in case 'the company' is unable for any reason, to deliver deed to said land, then and in that event, 'the company' shall have the right to cancel this contract upon returning to such purchaser, the amount of

money so paid hereunder by him, together with all notes executed by 'the purchaser,' and thereupon 'the company' and the owner shall be released and discharged from all liability and responsibility hereunder. * * * For the balance of said purchase price, namely $12,000, 'the purchaser' agreed to execute and deliver upon demand 'the company's' regular form of mortgage and purchase-money notes, said notes being payable in five annual installments thereafter of approximately even amounts with interest at 6 per cent per annum payable semiannually. 'The company' will thereupon convey or cause to be conveyed to 'the purchaser' the said lands above described, by deed of general warranty excepting as to any taxes or assessments of whatsoever kind or nature hereafter becoming due, and subject to existing leases, if any, and to any and all water or easement rights appurtenant to said lands. 'The company' further agrees to furnish 'the purchaser' a certified abstract of title to the said lands, which abstract will show a merchantable title in the grantor in the deed conveying title thereto. 'The purchaser' agrees to receive and within ten days from the receipt of such abstract, to examine the title to said land as shown by such abstract, and return the same to 'the company' together with whatever objections, if any 'the purchaser' may have to such title, and a reasonable time shall thereafter be allowed to remedy and remove such defects or objections; further agreeing that all objections to said title shall be considered as waived, unless made within such time. * * *''

It will be observed at once that the contract is materially different in its terms and provisions from the usual and ordinary contract for a deed, entered into by an owner with a purchaser of real property. Appellant is a banking corporation, located at Royal, in Clay County, this state. Appellees, who are husband and wife, reside on an 80-acre farm in the vicinity of Royal. In July, 1920, they, in company with a friend and his wife, at the request of an agent of the McCarty Land Company, went to Garden City, to look at some land which the company claimed to have for sale near that place. When they reached Kansas City, they joined an excursion party of about 300, all bound for the same destination. Upon arrival, they were treated for two days to automobile trips and lectures upon the country to

which they had gone, by someone interested in or procured by real estate men or by the sugar beet factory at Garden City. This is, however, immaterial. Appellees were finally induced to purchase the land described, at $300 per acre. The land was unimproved, and incapable of successful cultivation without irrigation. The price of the land was fixed with the understanding that the land would be irrigated. Appellees paid $1,500 cash on the consideration, and executed two notes: one for $500, and the note in controversy, for $10,000. The $500 note was to take the place of liberty bonds for that amount, which appellees agreed to, and which they subsequently did, deliver to a representative of the land company. The remaining $12,000 was to be paid by the execution of notes and mortgages upon the land. The McCarty Land Company neither owned nor pretended to own the land. It was proved upon the trial that they were not even agents for the sale thereof. One 40 of the land was owned by a resident of Indiana, and the other 40 by a resident of New York. The transaction with appellees was never made known to the owners of the land. The first, according to their testimony, that they knew of the note and contract was imparted to them in January, 1921, by a letter from appellees' attorneys. The owner of one of the 40's testified that the fair value of the tract did not exceed $5,000, which, as it appears, was $19,000 less than the consideration fixed in the contract.

No abstract of title was ever furnished appellees; but, in further exemplification of the McCarty Land Company's capacity to identify and deal with victims, its representative made a visit to the home of appellees, a few days after they returned from Kansas, and sought to obtain payment of the $10,000 note, representing that this money was necessary, in order to improve the land by irrigation.

At the conclusion of all the testimony, the court directed the jury to return a verdict in favor of the defendants. The questions presented for decision all go to the correctness of this ruling. Appellee Gordon B. Martin testified that, immediately after he returned from Kansas, he took the contract to the appellant bank, and submitted it to E. C. Nelson, cashier, for examination, and to obtain his advice as to the matter. Appellee was a small stockholder in the bank. He testified that Nelson took

the contract and read it over carefully, and that they discussed somewhat the question as to whether or not the deal was a good one. The contract was then placed by appellee in his private box in the bank. Nelson admitted that Martin came to the bank, handed him the contract, and asked him what he thought about the deal, but testified that he read it no further than to observe the description of the land. Upon cross-examination, however, he admitted that he might have observed other provisions of the contract, but that his observation was casual, and did not familiarize him with its terms. Some time prior to the maturity of the note, appellee Gordon Martin requested a loan from Nelson, as cashier of the bank, for $7,000, with which to consummate the deal. Failing to secure the loan from Nelson, he made application to, and secured a loan of the amount from, another bank in Royal. On July 14, 1920, Nelson wrote the land company, offering to purchase the note for $9,500. This letter was answered on the 16th by B. N. McGarvey, president of the State Bank of Kansas City, accepting the offer for the land company, and inclosing the note. A few days later, Nelson remitted $9,500 to the Kansas City bank, in settlement of the note.

By reference to the portions of the contract quoted above, it will be seen that it was not to become binding upon the parties until accepted by the owner. In the event of his failure or refusal to approve the contract, the company was given the right to return the money and notes to appellees, and, upon doing so, to be released from all further liability. The contract and note relate to and constituted parts of the same transaction, and, as between the parties, or a transferee of the note with notice of the terms of the contract, must be construed together. *Todd v. State Bank of Edgewood,* 182 Iowa 276; *Citizens' Bank of Edina v. Kriegshauser,* 211 Mo. App. 33 (244 S. W. 107); *Snelling St. Bank v. Clasen,* 132 Minn. 404 (157 N. W. 643); *Seaman v. McNamara,* 180 Wis. 609 (193 N. W. 377).

1. BILLS AND NOTES: delivery: conditional delivery.

The delivery of the note was conditional upon the acceptance of the contract by the owner of the land. Until it was accepted, the contract was, in form and in the intention and contemplation of the parties, a mere offer or proposal to buy the land at the price and upon the terms specified. Any transfer of

the note pending acceptance of the contract by the owner was in breach of faith. *Waukee Sav. Bank v. Jones,* 179 Iowa 261; *City Nat. Bank of Auburn v. Mason,* 192 Iowa 1048. No title to the instrument passed by its conditional delivery to the representative of the land company, who executed the contract as its agent. The note was, in fact, executed without consideration; but, if this is not true, the consideration wholly failed. In short, the fraudulent character of the transaction was conclusively established upon the trial.

Appellant relies for reversal upon the testimony of the officers of the bank, which, it is argued, was sufficient to carry to the jury the question of notice.

"The negotiability of a negotiable promissory note is not affected by the mere fact that it is given pursuant to an unperformed executory agreement." *Wegener v. Emmetsburg Nat. Bank,* 195 Iowa 1267; *McNight v. Parsons,* 136 Iowa 390; *Todd v. State Bank of Edgewood,* supra; *Grinnell Sav. Bank v. Gordon,* 195 Iowa 208.

2. BILLS AND NOTES: negotiability: executory agreement.

To constitute notice, it is necessary that the transferee of a note executed in pursuance to an unperformed executory contract for the conveyance of land must have notice of the breach of the contract or of the inability of the vendor to perform its terms, at the time of the transfer. *Grinnell Sav. Bank v. Gordon,* and other cases cited supra.

The doctrine of the above cases is not inconsistent with our holding in *Todd v. State Bank of Edgewood,* supra. In that case, the bank not only purchased the note which was given as part consideration for an unperformed executory agreement to convey land, but also took an assignment of the contract. We held that the bank was conclusively charged with notice of the terms of the contract, and that, by becoming an assignee thereof, it stood in the same relation to the purchaser as the bank's assignor. The holding of the court is not, however, based alone upon the ownership of the contract by the bank. This fact is given emphasis for another reason: that is, that it conclusively charged the bank with notice of the terms of the contract. We further held that the contract and note, when construed together, involved mutual and dependent obligations. Payment

was to be made contemporaneously with the conveyance of title. In the case before us, the contract on its face disclosed that it was not to be binding until approved by the owner of the land, and that "this proposal if accepted shall become a part of the contract evidenced by the notes and shall be considered as incorporated in and made a part of the notes." The necessary inference from the provisions of the contract was that the delivery of the note was conditional. The implication arising from the language of the contract was as strong as any express provision could have made it. If Nelson read the contract, as claimed by appellee, a jury would have been warranted in concluding that he knew its provisions, and knew that any transfer of the note before the contract was approved by the owner of the land, would be a fraud upon appellees. In other words, Nelson would have had such notice as to charge the bank with bad faith in the purchase of the note.

It is suggested by counsel for appellant in argument that the only distinction to be made between the *Todd* case and the case before us is that, in the *Todd* case, the bank was the assignee of the contract, and not only conclusively charged with notice, but also obligated to perform the terms of one of the parties thereto. Our attention is also called to the reference in the opinion of the court in *Wegener v. Emmetsburg Nat. Bank,* supra, to the *Todd* case, and to the emphasis there given to the fact that the bank was the assignee of the contract. The distinction pointed out in the *Wegener* case was sufficient for the purpose of the court in deciding the issues then pending. The holding goes no further than that. Notice to Nelson of the terms of the contract in question would be as conclusive upon the bank as would the further fact that the transfer of the note was accompanied by the assignment of the contract. The difference is one of fact, and not of principle.

Much that is said above is in response to the contentions of counsel. The defect in the title to the note in question does not arise out of the breach of an executory contract,—the contract never went into effect. The note was delivered by appellees and held by the land company conditionally only, and subject to the final acceptance and approval of the contract by the owner of the land. The transfer was in breach of faith, and a

purchaser having notice that the delivery of the note was conditional could not be a purchaser in good faith, under the terms of the Negotiable Instrument Law.

We are, however, of the opinion that a verdict in favor of the defendant should not have been directed by the court. It was for the jury to say whether Nelson and the other officers of the bank, or appellees, testified to the truth. If Nelson's version of what occurred at the time the contract was handed to him by Martin is correct, the jury might have inferred that he treated the matter casually, and neither read nor became familiar with the terms and provisions of the contract. It is not claimed that the other facts and circumstances conclusively charge the bank with notice. The evidence upon this issue presented a question of fact for the jury. Of course, the burden was upon appellant to prove that it was a good-faith purchaser for value, and without notice of the defenses pleaded. The judgment of the court below is, accordingly,—*Reversed.*

**3. BILLS AND NOTES: actions: directed verdict.**

PRESTON, C. J., DE GRAFF and VERMILION, JJ., concur.