BLATZ BREWING COMPANY, Appellant, vs. RICHARDSON & RICHARDSON, INC., Defendant: MARSHALL & ILSLEY BANK, Garnishee Defendant: BANK OF CALIFORNIA, NATIONAL ASSOCIATION, Interpleaded Defendant and Respondent.

*September 13—October 10, 1944.*

568

For the appellant there were briefs by *Lecher, Michael, Spohn & Best,* attorneys, and *Herman E. Friedrich* of counsel, all of Milwaukee, and oral argument by *Mr. Friedrich.*

For the respondent Bank of California, National Association, there was a brief by *Churchill, Davis & Churchill* of Milwaukee, and oral argument by *W. H. Churchill.*

FAIRCHILD, J. The right of appellant to recover in the garnishee action depends solely on whether the principal defendant, Richardson & Richardson, Inc., retained title to the draft in its negotiations with the bank. The intervening defendant, the respondent here, showed to the satisfaction of the trial court that the transaction was one of purchase and transfer of the draft and that a debtor-creditor relationship arose between the bank and the Richardson firm.

The trial court was of the opinion that by the weight of authority a draft deposited by a customer who receives credit from the bank as cash and against which the customer is given the immediate right to draw, in the absence of any understand-

ing as to how that deposit shall be treated or proof of circumstances from which a different understanding may be inferred, takes the title out of the customer and passes it to the bank. Support for that doctrine is found in *Acme Hay & Mill Feed Co. v. Metropolitan National Bank of Minneapolis* (1924), 198 Iowa, 1337, 201 N. W. 129; *In re Vickers v. Machinery Warehouse & Sales Co.* (1920) 111 Wash. 576, 191 Pac. 869; *Burton v. United States* (1905), 196 U. S. 283, 25 Sup. Ct. 243, 49 L. Ed. 482; *Dubuque Fruit Co. v. C. C. Emerson & Co.* (1926) 201 Iowa, 129, 206 N. W. 672. Wisconsin has adopted this rule in the case of *Aebi v. Bank of Evansville* (1905), 124 Wis. 73, 102 N. W. 329, and in *Thomas v. Citizens Nat. Bank* (1914), 157 Wis. 635, 147 N. W. 1005.

In the *Thomas Case, supra,* plaintiff purchased two carloads of potatoes from the Produce Exchange of Maryland. On the day of shipment the Produce Exchange drew its draft upon plaintiff in favor of the Citizens National Bank of Pocomoke City, Maryland. The Citizens bank credited the Produce Exchange in the passbook with the amount of the draft when it was issued and delivered by the Produce Exchange. The Maryland bank sent the draft to the Kellogg bank in Green Bay for collection and it was paid by the McCartney bank which had previously received a check from Thomas for the amount of the draft. Thomas then garnisheed the funds in the Kellogg bank. This court there followed the majority rule and held that the transaction constituted a sale of the draft and that the funds belonged to the Citizens Bank of Maryland and not to the drawer of the draft.

The negotiations making up the transaction now before us occurred in California which follows the majority rule. *Plumas County v. Bank of Rideout* (1913), 165 Cal. 126, 131 Pac. 360; *Newmark Grain Co. v. Merchant's Nat'l Bank of Los Angeles* (1913), 166 Cal. 203, 135 Pac. 958; *First Nat'l*

*Bank v. Corcoran,* 105 Cal. App. 116, 286 Pac. 1105. See also 68 A. L. R. 731.

Appellant contends that sec. 16c[1] of the Bank Act of California changes this rule so as to compel banks to act as agents of depositors in forwarding checks for collection in the absence of a written agreement between the parties changing that relationship. However, in *Bank of America v. Universal Finance Co.* (1933) 131 Cal. App. 116, 123, 21 Pac. (2d) 147, in interpreting that section, the court said:

"We fail to see anything in section 16c or in the history leading up to its adoption which makes the last-mentioned provision a declaration of public policy, as urged by appellant, requiring us to hold that the provisions of the section can only be changed by an agreement in writing. We observe no reason why the written, checks drawn by the Sammis-McBrien Company on the account containing the deposit of the check issued by appellant (at a time when there was an insufficient balance in said bank to pay the same without giving credit for such check), together with the circumstance of the

---

[1] Section 16c, chapter 312, p. 513, section 5, Statutes of California 1925; Deering's General Laws 1937, Act 652, p. 223. *Crediting of checks, notes, etc., deposited for collection: liability of forwarding bank.* Any credit allowed by any bank organized under the laws of, or doing business in, this state, for any check, note or other instrument providing for the payment of money and drawn on or payable at the same bank in which it is deposited, . . . shall be only provisional, subject to final payment and to the receipt by the bank in which it is deposited of the funds in actual money, or in solvent credit on the books of any federal reserve bank, or on the books of any bank designated as a depositary by the forwarding bank. . . .

*Liability of forwarding bank.* . . . Until the proceeds of any check, note or other instrument providing for the payment of money shall have been actually received by the bank allowing such credit, in actual money, or in solvent credit on the books of any federal reserve bank, or on the books of any bank designated as a depositary by the forwarding bank, such check, note or other instrument may be charged back to, or collected from, the depositor from whom it was received regardless of whether or not the check, note or other instrument itself can be returned. . . .

Any provision of this section may be modified or set aside by an agreement in writing between any such bank and any party from whom any check, note or other instrument is received for collection, deposit, or other purpose.

acceptance of the checks by the bank and payment thereof, does not constitute as high an order of evidence as any 'agreement in writing' between the parties could possibly be, and it might well be treated as such an agreement, changing the relationship from that of principal and agent to that of debtor and creditor."

In the present action, the giving of credit for the amount of the draft and the privilege to draw against it was also sufficient to change the relationship of the parties to that of debtor and creditor.

The minority rule, followed in *Bromfield v. Cochran* (1929), 86 Col. 486, 283 Pac. 45; *Edwards v. Lewis* (1929), 98 Fla. 956, 124 So. 746; *Joppa v. Clark Commission Co.* (1929) 132 Or. 21, 281 Pac. 834; *New York Hotel Statler Co. v. Girard Nat. Bank* (1927), 89 Pa. Super. 537, holds that where a check or a draft is drawn on one bank and unconditionally deposited in another, the latter becomes merely an agent of the depositor and title does not pass to 'the bank. The appellant does not contend that Wisconsin is not committed to the majority rule. However, it does maintain that the rule as adopted in Wisconsin does yield to a contrary intention of the parties if evidenced either by an express agreement or by the facts and circumstances of the case. If it can be deduced from the circumstances that it was the intention of the parties to treat the draft as a collection item rather than as a purchase and sale, that intention will control. And this is true, even when credit has been extended to the depositor, such credit being considered a mere favor extended by the bank.

In *Davies & Vincent v. Bank of Commerce* (1925), 27 Ariz. 276, 232 Pac. 880, the court, following the majority rule, held that although *prima facie,* a deposit of a draft is a sale of the draft when the depositor is given credit, it may be shown as between the parties that it was received for col-

lection and the giving of the credit was a mere gratuity on the part of the bank. Whether such intention can be inferred from the circumstances is a question of fact.

It is difficult to lay down any positive rules by which the intent of the parties to such a transaction may be determined. Much of the difficulty is perhaps due to the fact that the parties to the transaction have followed a customary course of conduct without ever expressing an intention to treat the deposit of such drafts in any particular way. But a deposit and the giving of immediate credit seems to suggest more strongly the passing of title to the item and the creation of a debtor-creditor relation than to indicate the relation of principal and agent for collection. The facts in one case, of course, may vary so from those in another, that the trier of fact must reach his conclusion from all the testimony. If the conclusion he comes to is a logical deduction from circumstances, the appellate court must abide by it.

Thus, where the draft was subject to deduction for the amount of freight, the court in *First National Bank of Roswell v. Smith Bros. Grain Co.* (1925 Tex. Civ. App.) 276 S. W. 951, found that the circumstances were sufficient to negate the presumption of ownership in the bank. And in *Davies & Vincent v. Bank of Commerce, supra,* the fact that the depositor had brought a suit against the drawee and successfully prosecuted the suit to judgment was held sufficient evidence to find an intention to create a principal and agent relationship. Courts have also held that notations on passbooks that the bank receives checks on deposit or for collection merely as an agent for collection and not as a purchaser thereof, is a material fact in finding the intent of the parties. *People ex rel. Russel v. Michigan Ave. Trust Co.* (1926) 242 Ill. App. 579.

The rule referred to as the majority rule is, then, in the nature of a presumption which comes into play when a draft is deposited in the bank and the depositor is given immediate

credit. It operates in the absence of agreement or facts and circumstances from which a contrary intention of the parties can be found.

The ultimate query is whether the evidence of the circumstances surrounding the transaction and the treatment of the draft item in the account books of the California bank so definitely established the intention of the parties to treat the draft as for collection as to overturn the trial court's finding to the contrary.

The evidence shows that when the employee of the Richardson firm took the draft to the bank she made the notation "For discount and collection" on the deposit slip. The deposit slip also had printed on it in the left-hand corner the following:

"In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This bank or its correspondents may send items, directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, regardless of whether or not the item itself can be returned, also any item drawn on this bank not good at close of business on day deposited."

It also appears that the bank did not charge interest till after the draft was honored and that subsequent to commencement of the garnishment action it charged to the account of the Richardson firm $1.05 for a phone call and $.75 for a telegram notifying the firm of the action. It was also a custom of the bank and appeared on the front cover of depositor's passbook that any credit allowed for the items was only provisional and until proceeds are actually received by the

bank, such items may be charged back to the depositor's account regardless of whether or not the item itself could be returned. The appellant argues that these circumstances, especially the notation on the bank passbook and the deposit slip, giving the right of charge-back to the bank indicate that the transaction was one for collection, the bank merely becoming the depositor's agent. The appellant maintains also that since the bill of lading and detailed invoice were attached to the draft so that the bank knew the hops must meet certain specifications if the draft was to be honored, the inference would be that the bank would not risk purchase of the draft but had merely taken it for collection. However, the right of charge-back cannot indicate the intention of the parties to treat the item as one for collection only, since the bank is only expressing its right to compel repayment by the drawer in case of the draft's dishonor. See *Holmes & Barnes v. Shawnee Milling Co.* (1926) 5 La. App. 391. The notation on the deposit slip "For discount and collection" cannot control on the question of intention since it is so ambiguous and inconsistent as to really indicate nothing. A draft cannot be for discount and collection both, although the use of the word collection was probably meant only to indicate that the draft was to be forwarded to Milwaukee for collection of the amount of the draft from the plaintiff. Nor do the other circumstances relied on by the plaintiff compel such interpretation.

On the other hand, and in support of the conclusion reached by the trial court, the passbook in which the amount of the draft was credited had one section in which items "For collection" were listed, and the draft involved in this action was not so listed, although other entries for collection did appear. It also appears that it was the duty of the cashier who handled the draft to deal only with discount transactions. And he testified positively that had the transaction been one for collection, it would not have gone through his hands. Forms used in the accounting system were of two kinds, one used for col-

lection items and one form used for discount transactions. This draft appears on the forms used for discount transactions.

From an examination of this evidence, it is considered that the trial court's finding that "it was the intention of Messrs. Richardson & Richardson and the Bank of California, National Association, at the time of the original transaction, that the ownership of the draft was to pass to the Bank of California, National Association, when the Bank of California credited the account of Richardson & Richardson with $7,831.82, the bank at the time permitting the depositor to immediately make substantial withdrawals from the amount deposited to its credit" cannot be set aside.

The bank, having taken title to the draft, the proceeds thereof are not subject to garnishment by the appellant.

*By the Court.*—Judgment affirmed.