Rubio Savings Bank of Brighton, Appellee, v. Acme Farm Products Company, a partnership, et al., Appellants.

No. 47335.

(Reported in 37 N. W. 2d 16)

548

April 5, 1949.

T. A. Michels, of Washington, and Edward L. O'Connor, of Iowa City, for appellants.

Edmund D. Morrison, Jr. of Washington, for appellee.

OLIVER, J.—Defendant Acme Farm Products Company is a partnership composed of defendants Paul M. Ross and Han-

nah J. Ross, husband and wife, of Chicago, Illinois, at which place the partnership is engaged in the produce business. Weisz Produce was a trade name under which Maurice Weisz operated a produce business at Brighton, Washington County, Iowa. Early in 1947 Weisz Produce made a number of sales and shipments of eggs and poultry to Acme Farm Products Company. The checks received in payment were deposited by Weisz Produce in its account in plaintiff, Rubio Savings Bank, of Brighton. The two checks in suit, for $6500 and $5000, respectively, were made to Weisz Produce by Acme, April 1 and April 3. Weisz Produce indorsed them, deposited them in its account in plaintiff-bank and received credit for the amounts thereof.

Plaintiff forwarded the checks for collection through channels. Before they were presented to the Chicago bank upon which they were drawn, Acme ordered payment stopped: "Reason: Merchandise for which these vouchers were advanced was diverted to other outlets (dealers)." In the meantime Weisz Produce had withdrawn from its account in plaintiff-bank the amounts of these checks. Several days later the unpaid checks were returned to plaintiff and were charged back against Weisz Produce account, in which certain deposits had been made during the interim. The balance due plaintiff-bank was $3097.84. Weisz disappeared and was adjudicated a bankrupt. Thereafter plaintiff brought this action for $11,500. Apparently the right of plaintiff to charge back the checks was challenged by another party in an action then pending and there was some thought the trustee in bankruptcy for Weisz might have rights in the matter.

Defendants' answer alleged the checks were without consideration and were procured by fraud. In reply plaintiff alleged it was a holder in due course. The questions of fact involved in these issues were submitted to a jury. There was a verdict and judgment for plaintiff for $3201.10 ($3097.84 with interest). Defendants have appealed.

I. The trial court overruled various contentions and pleaded defenses based upon defendants' theory the checks were not negotiable and instructed the jury they were negotiable. Defendants assign error to these orders and instructions. Except for

the statement stamped thereon, "Protested for Non-Payment Apr 7-1947"; etc., the following photograph shows substantially the appearance of the face of the $6500 check when first received by plaintiff bank:

The check is approximately 7 by 6 inches in size. The space for indorsement is the lower half of the front. The back of the check is ruled with horizontal and vertical lines similar to a statement of account. It recites (at the top) : "To Weisz Produce —Apr. 1, 1947". (In the body) : "Eggs Lot #". (At the bottom) : "Remarks: P. M. R." and "$6,500.00". The other check is dated April 3, 1947, is for $5000 and is stamped: "Protested for Non-

Payment April 9, 1947." On the back : "To Weisz Produce—Apr.
3, 1947—Advance on Mdse. to arrive—5000—Remarks : P. M. R.
—$5,000.00."

Defendant Paul M. Ross testified they had devised this
form of "procurement draft" for their protection "where we
paid for goods or on account for goods to be delivered at future
time into our possession .* * .*." In the beginning he had talked
with Weisz and agreed "I would mail a procurement draft as a
payment on merchandise if he had it on hand, in transit to us,
or in Chicago delivered to us * * * and Mr. Weisz agreed if
he * * * in any way diverted the merchandise for which that
was advanced, that draft would not be deposited in his bank.
* * * Thereafter, the transactions were carried on entirely by
telephone. Mr. Weisz would phone me * * * what was in transit
*. * *. We would agree the value of that shipment would be
estimated. Upon such telephone requests of Mr. Weisz inform-
ing us that he had so much poultry or eggs for shipment to us
* * * we would then send one of them [produce vouchers] out
to him by mail." Ross ordered payment of the two checks in
suit stopped April 4, 1947, when "I learned that contrary to a
gentleman's agreement between . Mr. Weisz and myself, those
drafts had been deposited in his bank * * * for which we were
to receive nothing."

█ ▪ It is apparent this form of check was devised with the
thought it could be "deposited" in a bank and placed in circula-
tion, but Acme need not pay it to any holder should the payee
breach his "gentleman's agreement" that he would not deposit
it if he "in any way diverted the merchandise for which that
was advanced * * *." In considering whether this form of
instrument is sufficient to deprive others of their rights as holders
in due course, it will, of course, be construed most strongly
against Acme, because Acme prepared it.

█ Another established rule of construction is that courts
resolve doubts in favor of negotiability. 10 C. J. S., Bills and
Notes, section 13, page 424 ; id. section 86, page 527 ; 7 Am. Jur.,
Bills and Notes, section 3, page 789. Williamson v. Craig, 204
Iowa 555, 562, 215 N. W. 664, 667, states :

"Since the adoption of the Uniform Negotiable Instrument

Law, and since negotiable instruments have taken such a prominent part in the business of the commercial world, the tendency of the courts is to hold instruments negotiable where they can reasonably be so held: It is apparent from the citation of authorities above that this is the drift of the modern holdings."

In the language of Townsend v. Adams, 207 Iowa 326, 329, 222 N. W. 878, 879, 77 A. L. R. 1079, "Within the bounds of reason, then, liberality of construction must be exercised in favor of negotiability."

On the face of the checks is printed: "Endorsement: Guarantee delivery in good order, weight and count merchandise listed opposite side." Defendants contend this language makes payment conditional upon the delivery of the merchandise. We disagree. Paper nonnegotiable by reason of its conditional character is commonly distinctly conditional in form with language such as: on condition that—if—in the event, etc. 10 C. J. S., Bills and Notes, section 86a, page 525. See Home State Bank v. Martin, 196 Iowa 1092, 195 N. W. 977. Defendants do not point to any specific language as expressly or impliedly supporting their contention. They argue merely that this is the tenor of these instruments. A like argument would be equally applicable to any check which refers to an executory consideration. The absence of any language in the instruments indicating payment was conditional upon delivery of the merchandise requires a conclusion to the contrary.

A mere reference in the instrument to an extrinsic agreement or a statement of the origin of the transaction does not impair negotiability. Code of Iowa, 1946, section 541.3, subsection 2; First Nat. Bk. v. Power Equipment Co., 211 Iowa 153, 155, 233 N. W. 103; Williamson v. Craig, 204 Iowa 555, 215 N. W. 664; 7 Am. Jur., Bills and Notes, section 112, page 849; 10 C. J. S., Bills and Notes, section 86c, page 527. " 'The negotiability of a negotiable promissory note is not affected by the mere fact that it is given pursuant to an unperformed executory agreement.' " Home State Bank v. Martin, 196 Iowa 1092, 1097, 195 N. W. 977, 979. See also 8 Am. Jur., Bills and Notes, section 402, page 139.

The memoranda on checks describing the funds and

the source from which they come or the payment intended by the checks do not act as a notification to one discounting them of any facts which he is bound to investigate. Bost v. Block, 195 Okla. 198, 156 P. 2d 610. Knowledge that an instrument was given for the sale of goods warranted or guaranteed by the seller does not deprive an indorsee of his status as a holder in due course if the warranty or guaranty is breached, where the holder had no knowledge of the breach prior to taking the instrument. 10 C. J. S., Bills and Notes, section 330a, page 829; 7 Am. Jur., Bills and Notes, section 178, page 890; Home State Bank v. Martin, 196 Iowa 1092, 1097, 195 N. W. 977, and authorities cited.

▓▓ Plaintiff argues there was no "merchandise listed" on the back of the checks. Whether it was so "listed" need not be determined. We hold the checks were negotiable in either event.

Various decisions in analogous cases support this conclusion. Some of them are: Coffin v. May, 104 N. J. Law 347, 349, 140 A. 331, 333, 61 A. L. R. 815, 819, " 'This trade acceptance covers two hundred twenty-two radio cabinets and benches which are absolutely guaranteed and are to be replaced * * * if found damaged * * *.' " Critcher v. Ballard, 180 N. C. 111, 112, 104 S. E. 134, " 'This note is for the purchase [price] of stallion, and said Ames warrants him * * *.' " First Bank of Marianna v. Havana Canning Co., 142 Fla. 554, 561, 195 So. 188, 191— Check made June 7. "For berries to be delivered to us June 8th." Citing many decisions.

Todd v. State Bank, 182 Iowa 276, 165 N. W. 593, 3 A. L. R. 971, and Omaha Bank v. Novotny, 236 Iowa 54, 17 N. W. 2d 836, cited by defendants are not factually in point. In the Todd case the bank secured with the note an unperformed executory agreement which showed the delivery of the note was conditional. The reasons why that case is not here applicable are more fully stated in Home State Bank v. Martin, 196 Iowa 1092, 1097, 195 N. W. 977. In the Novotny case the court concluded the note and attached receipt showed the note was to be paid by certain deductions and held the maker's liability should be limited accordingly.

▓▓ II. Weisz Produce deposited the two checks in plaintiff bank April 2 and 5, respectively. Each was indorsed to

plaintiff-bank "For deposit only." In accordance with the customary conduct of these parties the amounts of the checks were credited to the Weisz Produce account and it was permitted to check against and withdraw those credits. Defendants contend the indorsement made plaintiff-bank merely a trustee for Weisz Produce and not a holder in due course.

Although decisions from some jurisdictions support this view it has been sharply criticized by various writers. See Ogden on Negotiable Instruments (1947) Fifth Ed., 199; Brannan's Negotiable Instruments Law, Fifth Ed., 437. Plaintiff cites, as holding to the contrary: Atlantic City Nat. Bk. v. Commercial Lbr. Co., 107 N. J. Law 492, 155 A. 762, 75 A. L. R. 1413; Security Bank v. Northwestern Fuel Co., 58 Minn. 141, 59 N. W. 987; Blatz Brewing Co. v. Richardson & Richardson, 245 Wis. 567, 15 N. W. 2d 819. Moreover, it is not the rule in this state. Midwest Nat. Bk. & Tr. Co. v. Niles & Watters Sav. Bk., 190 Iowa 752, 180 N. W. 880, and Goeman v. Live Stock Nat. Bk., 238 Iowa 1088, 29 N. W. 2d 528, held instruments thus indorsed, where credit was given the depositor, passed title to the bank to which they were thus indorsed. See also Acme Hay & Mill Feed Co. v. Metropolitan Nat. Bk., 198 Iowa 1337, 201 N. W. 129. We do not agree with defendants' suggestion the language in the Goeman case was dicta. The record shows the drafts in that case were indorsed by Pioneer Valley Savings Bank to defendant, Live Stock National Bank, "For deposit only."

We are not prepared to overrule these holdings. It is our conclusion the indorsement "For deposit only" did not prevent plaintiff-bank being a holder in due course.

III. When the protested checks were returned to it plaintiff-bank applied thereon the balance in the Weisz Produce account. Defendants contend this made the checks dead instruments. There is no merit in this contention. The application upon the checks of funds belonging to the indorser did not discharge the maker. The only payment which will discharge the principal debtor is payment in due course by himself or on his behalf. Code section 541.120. Defendants' argument is predicated largely upon the premise the checks were drawn upon

plaintiff-bank. That premise is erroneous and decisions founded thereon are not in point. Plaintiff-bank had the right to charge back the checks, pursue Weisz Produce on its indorsement and maintain this action against defendants, as makers of the checks. The charging back and pursuit of the indorser did not create an estoppel or constitute an election of remedies such as to bar this action. Bureau Marketing Service v. Lewis, 220 Iowa 662, 263 N. W. 7. See also Goeman v. Live Stock Nat. Bk., supra, 238 Iowa 1088, 29 N. W. 2d 528, and Andrew v. Security Tr. & Sav. Bk., 214 Iowa 1199, 243 N. W. 542.

 IV. Defendants moved for a directed verdict on the ground the failure to protest the checks and give notice of protest on the day of their dishonor discharged defendants, as makers, from liability thereon. Error is assigned to the overruling of this motion.

Code section 541.160 provides protest is dispensed with by any circumstances which would dispense with notice of dishonor. Section 541.115, subsection 5, provides notice of dishonor need not be given a drawer who has countermanded payment. 8 Am. Jur., Bills and Notes, section 743, page 411, states this is uniformly agreed. To the same effect is 10 C. J. S., Bills and Notes, section 408, page 940. Such countermand waives protest. 8 Am. Jur., Bills and Notes, section 702, page 385. Patterson v. Oakes, 191 Iowa 78, 80, 181 N. W. 787, 788, 14 A. L. R. 559, states: "In such event, the relations between the drawer and the payee became the same as if the check had been dishonored, and notice thereof given to the drawer."

The order of the trial court was correct. Other grounds upon which it might be sustained need not be considered.

Other assignments of error in the main case have been considered and found not well-founded or immaterial in view of our conclusions, or not prejudicial.

V. The counterclaim of defendant Acme Farm Products Company was based upon alleged wrongful attachment. The material facts are not in dispute. The pleaded ground for attachment was: "Defendants are nonresidents of the State of Iowa." See section 639.3, subsection 2, Code of 1946. The action was brought in Washington county against the partnership and

its members. The venue was fixed by Code section 616.4. The property attached in Keota, Keokuk county, consisted of three lots with a one-story garage building at the rear, standing in the names of Ross and wife, and personal property of the partnership there kept. The levy upon this personal property was made under Rule 260(b), Rules of Civil Procedure, and defendants were not deprived of its possession and use. The only property actually seized was the partnership truck with a few eggs, egg cases, etc., attached in Washington county. The truck had been mortgaged to a Chicago bank. Shortly thereafter plaintiff purchased the mortgage and took possession of the truck under it.

Acme Farm Products Company was formerly an Illinois corporation. Some years ago it was changed to a partnership. Its principal place of business was Chicago. It had an agency at Keota, Iowa, with one employee or agent, and the truck with which he collected eggs and poultry purchased for it from various dealers in the territory. He usually hauled this produce to Acme at Chicago or to processing plants in Missouri operated by brothers of Mr. Ross. He made these trips two or three times a week.

The agency occupied the old building upon the rear of the lots owned by Ross and wife. This served as a garage for the truck and a warehouse for storing empty egg cases, etc. The office equipment consisted of a telephone, a platform scale, a desk, and a chair. The partnership had no bank account, books of account or records in Iowa. Payment for eggs and poultry was made by checks drawn in Chicago upon the partnership bank account in that city.

Defendants concede Ross and wife were nonresidents and in argument do not challenge the attachment of their real estate on that ground. However, they contend the partnership composed of Ross and wife was a resident of Iowa and the attachment of its property on the ground of nonresidence was wrongful.

In Iowa a partnership is a legal entity. Acme was, of course, a foreign partnership with its home office and principal place of business in Chicago. It had this agency in Keokuk county. Defendants contend this agency made the partnership a resident of Keokuk county. The question here is not whether

it was a resident of the state for some purposes, but whether it was a resident of the state within the purview of subsection 2 of section 639.3, Code of 1946.

Most of the outside authorities are from jurisdictions which do not regard a partnership as a legal entity. See 4 Am. Jur., Attachment and Garnishment, section 446, page 829; 7 C. J. S., Attachment, section 30, page 217; Decennial Digests, Partnership, Key No. 208(1); Byers v. Schlupe, 51 Ohio St. 300, 38 N. E. 117, 25 L. R. A. 649.

In 11 Iowa L. Rev. 193, an article on Jurisdiction over Partnerships, etc. states that the law of corporations relative to jurisdiction over domestic and foreign companies serves by way of useful analogy in solving many of the difficulties regarding partnerships.

As pointed out in 20 Iowa L. Rev. 483:

"The Iowa legislature has used the words resident, residence, and inhabitant in various statutes without discrimination or regard for the basic purposes involved. Statutes of convenience and procedure, statutes establishing substantive rights and duties * * * have not, so far as the use of these words is concerned, generally been distinguished in drafting. * * * Many inconsistent decisions have been reached by the state supreme court as a result of basing the decision in a given situation upon the authority of cases defining the same word or words as used in statutes entirely different in nature and purpose."

Edwards v. Tracy, 203 Iowa 1083, 212 N. W. 317, states the office of attachment is to hold the property for the satisfaction of plaintiff's demand and that although it is in derogation of the common law, under our statute the proceedings are to be liberally construed. Code section 639.67 expressly provides the attachment chapter shall be liberally construed. Code section 639.3, subsection 2, should be considered in the light of this provision.

Defendants cite Fitzgerald v. Grimmell, 64 Iowa 261, 20 N. W. 179, which held that under a statute providing the jurisdiction of justices of the peace does not embrace suits against actual residents of any other county, a partnership would be

regarded as an actual resident of any county in which business was done, in so far as to allow such suits to be brought against it in any such county. That statute is a statute of convenience. 20. Iowa L. Rev. 487. As stated in Fitzgerald v. Arel, 63 Iowa 104, 107, 16 N. W. 712, 714, 50 Am. Rep. 733:

"The object of the statute * * * was, doubtless, to secure persons against annoyance from suits where they could not conveniently remain to defend. But this reason cannot be presumed [held] to apply, where a person is sued in a county in which he has set up housekeeping with his family."

Hence, it was held the action before the Justice of the Peace could be maintained, even though defendant had a permanent residence or domicile in another county of Iowa.

In Ruthven v. Beckwith & De Groat, 84 Iowa 715, 718, 45 N. W. 1073, 1074, 51 N. W. 153, the partnership had only one place of business, which was in Palo Alto county. It was held to be a resident of that county in the sense that it could remove permanently out of the county, etc., so as to entitle its creditors to an attachment on that ground. The decision quotes from Fitzgerald v. Grimmell, supra, that for jurisdictional purposes a partnership may be considered as having a residence in every county in which it does business and states: "To hold otherwise would give to partnerships an immunity from attachments that is not accorded to natural persons."

That is precisely the immunity defendant partnership is claiming in this case. If Mr. Ross or Mrs. Ross was the sole proprietor of Acme, its property in Iowa would always be subject to attachment as the property of a nonresident. There is no good reason why an office or agency in Iowa should transform a foreign partnership into a resident of Iowa for this purpose, when it does not thus affect an individual or a corporation. Such a holding would be directly contrary to the express spirit of the Ruthven case.

It may be well to point out that the statements in the foregoing decisions relative to doing business in a county apparently refer to doing business through an office or agency therein. The

Grimmell and Ruthven cases are based in part upon what is now section 616.14, Code of Iowa, 1946:

"When a corporation, company, or individual has an office or agency in any county for the transaction of business, any actions growing out of or connected with the business of that office or agency may be brought in the county where such office or agency is located."

A related rule, Rule 56, Rules of Civil Procedure, provides personal service may be made:

"(f) Upon a partnership * * * by serving * * * any general or managing agent * * *.

"(g) If the action, whether against an individual, corporation, partnership or other association suable under a common name, arises out of or is connected with the business of any office or agency maintained by the defendant in a county other than where the principal resides, by serving any agent or clerk employed in such office or agency."

Did the partnership have a general or managing agent in Iowa? Perhaps the employee who operated the truck was not such. Is this an action which arose out of or was connected with the business of the Keota agency? Ross testified he first talked to Weisz personally and that thereafter the transactions were carried on between them entirely by telephone. Should both the foregoing questions be answered in the negative, personal service of original notice upon defendant partnership could not have been made in Iowa unless a partner or general agent entered the state. If, in addition, there was no ground for attachment other than nonresidence, defendant partnership, as a resident under its interpretation of the statutes, would be insulated from any suit in the courts of this state upon this claim. Statutory construction which would open the door to such result should be avoided if possible.

This court has frequently held section 616.14 would not authorize venue in a county unless the action arose out of or was connected with the business of the agency there located. See Tuttle v. Nichols Poultry & Egg Co., 240 Iowa 199, 35 N. W.

2d 875. However, if, as defendants contend, an agency in a county transforms its nonresident principal into a resident of the county, venue would lie in such county under section 616.17 irrespective of the origin of the action. That an agency does not make the principal a resident of the county under the quoted sections is indicated by the language of Rule 56(g)—"* * * any office or agency maintained by the defendant in a county other than where the principal resides * * *."

In Nickell v. District Court, 202 Iowa 408, 210 N. W. 563, we held a railroad company was not a resident of a county in which it was suable under a venue statute, now section 616.8, analogous to section 616.14. Wiar v. Wabash R. R. Co., 151 Iowa 121, 122, 130 N. W. 794, 795, in discussing statutes of this nature, states: "The theory of 'residence' adopted in such cases is in the nature of a legal fiction, resorted to for the sole purpose of rendering such foreign corporation *suable* within the state, and not for the purpose of changing its status in any other respect."

We hold the agency in Iowa did not make defendant partnership a resident of Iowa within the purview of section 639.3, subsection 2, and that this ground of attachment was established as a matter of law. It follows defendants were not entitled to have it submitted to the jury and their complaints concerning orders and instructions in connection therewith need not be considered.

VI. Defendants complain instructions on the counterclaim did not require plaintiff to establish their indebtedness to it. We need not consider this proposition. By its verdict of $3201.10 for plaintiff the jury determined this issue against defendants. Hence, any error in the instructions on the point would be without prejudice. Davidson v. Vast, 233 Iowa 534, 544, 10 N. W. 2d 12, and citations.

Some of the delay in determining this appeal resulted from its reassignment after the opinion first submitted failed to secure sufficient concurrences.—Affirmed.

BLISS, GARFIELD, SMITH, MULRONEY, and HAYS, JJ., concur

MANTZ, J., dissents.